385 P.2d 401

Orville O. MABE, and Edna Mabe, Husband and Wife, Plaintiffs-Appellants,

v.

The STATE of Idaho, on relation of Roscoe C. RICH, Ernest F. Gaffney and Wallace C. Burns, the Board of Highway Directors, Defendant-Respondent.

No. 9204.

Supreme Court of Idaho.
Sept. 26, 1963.

Clemons, Skiles & Green, Elam, Burke, Jeppesen & Evans, Boise, for appellants.

partment of Highways, Anton Hohler and W. Kent Naylor, Boise, for respondent.

Allan G. Shepard, Atty. Gen., Boise, Faber F. Tway, Chief Legal Counsel, De-

McFADDEN, Justice.

In the prior opinion in this action, Mabe v. State, 83 Idaho 222, 228, 360 P.2d 799, 802, the District Court entered its order granting respondent's motion for summary judgment against appellants Mabe and wife, which order was reversed by this court and the cause remanded with the following statement:

"* * * Should further proceedings show that there had been such a substantial impairment of appellants' right of access as alleged, as contrasted to a mere matter of inconvenience or circuity of route, as contended by respondent, then appellants must be compensated for such resulting damages as may be properly established. Any such damages, however, must be limited to those directly attributable to loss of value of appellants' premises occasioned by the impairment of their right of access as of the time of such impairment; and must exclude noncompensable items occasioned by the change in route and traffic flow brought about by the construction of the stretch of new highway."

The case was thereafter tried before a jury which returned a verdict of $4,208.33 in favor of appellants. The respondent timely moved for judgment notwithstanding the verdict. The court entered judgment for respondent. The district judge premised his order upon the ground "that plaintiffs failed to prove any compensable damages as defined by the Idaho Supreme Court in its opinion in this case filed March 31, 1961."

The facts show appellants were the contract purchasers of a cafe and service station called "Crater Station", which real property abutted on the highway which was formerly the main interstate highway designated as U. S. Highway 30, 20 and 26, and which was also the local thoroughfare between Boise and Mountain Home, Idaho. The respondent under Idaho Highway Project I–82–2 (1) 83 constructed a new interstate highway approximately 2000 feet northwest of and parallel with the old U. S. Highway. This new interstate highway is part of the National System of Interstate and Defense Highways and appellants will have no direct access to it from their land. The old highway continues to exist unchanged for a distance of about 3.5 miles to the west and 4.7 miles to the east. Appellants' direct access between their property and the old highway remains unchanged and is in no way interfered with.

The testimony showed further that traffic coming into appellants' property from the east could turn off the interstate highway at a place 4.7 miles east of appellants' property and proceed without obstruction

down the old U. S. highway to the station. However, there is no interchange constructed at this turn off and west bound traffic must necessarily cross through east bound traffic. The testimony concerning the route traffic on the new interstate highway must take in order to reach appellants' property from the west, is conflicting. Appellant Mabe testified:

"* * * they would have to turn off back out there at Mayfield [an interchange some miles to the west] and turn off to the left, which would be east, and line through the sagebrush and up toward Dan Skin Mountain and back out into the sagebrush and then over the overpass just the other side of the Crater Station, which is twenty miles from the Crater Station before you get back on the Freeway again."

Respondent's witness Leonard, an engineer of the Idaho Department of Highways, testified that he drove from the west to the Mabe property on the morning of the trial, tracing his route on an exhibit; that he travelled a distance of about fourteen miles from where he left the Interstate at Interchange No. 2, travelling over paved and gravel roads, and that the distance from appellants' property to Interchange No. 2 by the old route was 11.7 miles.

Assuming, but without deciding the question, that there was sufficient evidence for the jury to determine that access to appellants' property has been substantially impaired, the question remains whether appellants proved any compensable damages.

In Mabe v. State, supra, we said, "Appellants, as they recognize in their brief, are without remedy for any loss of value of their property by reason of diversion of traffic, occasioned by the creation of the new highway." The record discloses that appellants' estimate of damages they claim to have suffered was testified to by two witnesses in addition to appellant Mabe. An examination of this testimony discloses that each witness premised his estimate of damages upon some elements that are non-compensable.

On direct examination appellants' witness Emmett Newell testified as follows:

"Q. In your opinion as a real estate broker and appraiser, what was the reasonable market value of the property immediately prior to the construction of the new Interstate highway section as it was built past the property?

"A. $25,000.

"Q. And what in your opinion is the market value of the property as it sits now after the construction of the Interstate?

"A. I thought that the land, plus the salvage value of a few items that were there would be a thousand dollars."

On cross-examination Mr. Newell gave the following testimony:

"Q. In your $24,000 damage figure, what elements of damage did you consider to make up that $24,000?

"A. I consider first the value of the buildings as the value of the property as I saw it, before any interference at all by the change of the highway. I considered afterwards the fact that anyone reaching that property would be forced to take an out-of-the-way route to get there, and that it wasn't feasible in my mind that anyone would do that. The property would have no income because there would be no one to trade there."

The testimony of witness C. C. Campbell on direct examination was as follows:

"Q. And what, in your opinion, was the reasonable market value of the property immediately prior to the construction of the Interstate route at that point?

"A. $22,640.

"Q. And what in your opinion is the highest and best use of the property after the construction of the Interstate route, in the manner that it is constructed there?

"A. The property actually would be valueless at the present time only for a limited value for grazing. It has a potential value for farm land, but that is merely potential, depending (upon) the development of water in the future."

On cross-examination Mr. Campbell testified:

"Q. Did you state what amount of damages in your estimation the plaintiff should receive?

"A. I didn't make an appraisal in regard to any damages. My appraisal was based on the replacement value of the property."

The appellant Orville Mabe testified that the market value of this property prior to construction was at least $25,000 and that after construction of the new highway its only value would be for grazing land. On cross-examination Mr. Mabe was asked, "How much of this damage do you attribute to loss of traffic in front of your business?" He answered: "Well I'd say almost a hundred per cent. I don't know what you would get out of the property as it stands now out there, without traffic."

However, in Mabe v. State, supra, we stated that diversion of traffic is non-compensable in an inverse condemnation proceeding and cannot be considered as an element of damage. See also: Village of Hazleton & Eden v. Idaho Bd. of Hwy. Div., 83 Idaho 554, 566, 367 P.2d 294 and 301. Therefore, it necessarily follows, in this type of proceeding, that the measure

of damages cannot be the full difference in the value of property before and after construction; the allowance of such damages would automatically include elements for which the abutting owner is not entitled to recover.

In condemnation proceedings where less than the whole of the property is taken the measure of damages is generally the difference between the market value before the taking and after the taking. 18 Am.Jur. 919, Eminent Domain, § 280; State ex rel. Rich v. Dunclick, 77 Idaho 45, 286 P.2d 1112. In this action in inverse condemnation, we have previously pointed out (Mabe v. State, supra) that "Any such damages * * * must be limited to those directly attributable to loss of value of appellants' premises occasioned by the impairment of their right of access as of the time of such impairment * * *."

Here all of appellants' testimony as to the amount of damage sustained is based upon the full difference in the market value of the property before construction of the Interstate highway as compared to the market value after construction. The witnesses made no effort to segregate the non-compensable element of diversion of traffic from their estimates. In City of Chicago v. Spoor, 190 Ill. 340, 60 N.E. 540, 542, the Supreme Court of Illinois held:

"The evidence of damages resulting from diversion of traffic or changing the method of transportation on the street was not legitimate for any purpose, and opinions of witnesses based on depreciation for those causes should have been excluded."

This rule was expressly approved by the Supreme Court of California in Rose v. State, 19 Cal.2d 713, 123 P.2d 505, 521. In that case a witness, Woodward, allowed non-compensable elements to figure in his estimate of damage sustained by the alleged loss of access to property. The California court concluded that this evidence should have been stricken.

In Blumenstein v. City of Long Beach, 143 Cal.App.2d 264, 299 P.2d 347, 352, the City of Long Beach appealed from a judgment in an inverse condemnation action awarding respondent $5,000 damages suffered when street construction separated a lot from the street. The principal witness for respondent testified that the property had declined $15,000 in market value. The Court of Appeal found that this witness had based his estimate upon some elements of damage that were non-compensable and that his testimony as to the amount of damages should have been stricken. The Court stated:

"Thus, the trial court had no testimony whatsoever on the question of the amount of compensable damage done to plaintiff's property by the construction of the improvement which was not

colored by the inclusion and consideration of noncompensable factors. That the trial judge himself was dissatisfied with the extent of the evidence for respondent on the question of damages is implicit in his award of only one-third of the damages estimated by the expert and was expressed at one stage of the trial where he complained that the evidence on this matter was too 'sketchy' for his liking. Respondent earnestly contends that the award of only one-third the damages estimated by the expert witness impliedly indicated that the trial judge excluded from his consideration of the damages all those which were due to such noncompensable injury as that caused by diversion of traffic. However, a close inspection and analysis of the evidence discloses that the trial judge had no competent proof to guide him in computing the extent of the detriment suffered by virtue of compensable injuries and consequently he was not in a position to calculate with a fair degree of accuracy the extent of the damages. Therefore, the evidence on the issue of the amount of compensable injury done to respondent's property is insufficient."

Appellants contend, nevertheless, the jury was clearly and correctly instructed upon the law and in applying those instructions to the evidence they returned a verdict in favor of appellants, which verdict should not have been set aside. In City of Chicago v. Spoor, supra, it was similarly argued that it would be proper "to leave the estimates of damages by plaintiffs' witnesses before the jury, although they included damages not recoverable, and then control the evidence by an instruction." The Supreme Court of Illinois in that case in rejecting such argument pointed out in the following language:

"The witnesses themselves were not able to separate the damages, and state what part of their estimate rested on an improper basis. The jury could not separate what the witnesses who made the estimate could not, and no instruction would enable them to do so. Furthermore, the rule is not as claimed. If evidence is competent for one purpose and not for another, its application may be controlled by an explanation to the jury when it is admitted, or, in some cases, by an instruction; but, where it is not proper for any purpose, it is error to submit it to the consideration of the jury."

In a subsequent condemnation case, the Supreme Court of Illinois again asserted:

"Opinions of witnesses based upon supposed elements of damage which were not recognized by law as proper to be considered in condemnation proceedings should have been excluded. Only such opinions as are based on evidence

of lawful elements of damage can be of benefit to a jury in the assessment of the amount of damage." Illinois Power and Light Corporation v. Talbot, 321 Ill. 538, 152 N.E. 486, 488.

■■ A motion for judgment notwithstanding the verdict under I.R.C.P. 50(b) similarly to the previous rule, admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom and should be granted only when there is absence of evidence to support the verdict. Hendrix v. City of Twin Falls, 54 Idaho 130, 29 P.2d 352; Hobson v. Security State Bank, 56 Idaho 601, 57 P.2d 685; 2B Barron & Holtzoff, Federal Practice and Procedure, § 1079, p. 413 and § 1075, p. 375. After searching the record we are of the opinion that all of appellants' estimates of damages are premised upon some elements of noncompensable damages; the authorities from which quotations herein were taken indicate such evidence is improper. It is our determination that there was no evidence on the question of the amount of compensable damages, if any, to appellant's property which was not colored by the inclusion of the noncompensable factors, and that the jury's verdict was based only on conjecture or speculation.

■■ In this state the burden of proving a right to compensation is upon the condemnee. Village of Lapwai v. Alligier, 69 Idaho 397, 207 P.2d 1025; State ex rel.

Rich v. Dunclick, Inc., 77 Idaho 45, 286 P.2d 1112; State ex rel. Rich v. McGill, 79 Idaho 467, 321 P.2d 595, 73 A.L.R.2d 613. The appellants, standing in the position of condemnees in this action partaking of the nature of inverse condemnation, having failed to support their right to compensation with any substantial evidence, the judgment for respondent notwithstanding the verdict, is affirmed.

Costs to respondent.

KNUDSON, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.