746 P.2d 1040

**Gary F. ARNOLD, Plaintiff–Appellant,**

v.

**DIET CENTER, INC., an Idaho corporation, and Michael D. Ferguson, Defendants–Respondents.**

No. 16628.

Court of Appeals of Idaho.

Dec. 2, 1987.

---

**582**

Morton B. Hiller, St. Clair, Hiller, Wood, McGrath, St. Clair & Baker, Idaho Falls, for plaintiff-appellant.

Gordon S. Thatcher (argued), Thatcher, Andrus, Rigby & Perkes, Rexburg, and William D. Olson, Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendants-respondents.

WALTERS, Chief Judge.

This is an appeal from a judgment in favor of Diet Center, Inc. (DCI) in an action asserting wrongful termination in an employment contract. In his complaint, the plaintiff-appellant, Gary Arnold, also alleged that as a result of his termination from employment with DCI, he suffered damages for defamation of character and invasion of privacy by post-termination publication of his alleged breach of confidentiality of DCI matters. In a summary judgment proceeding, DCI asserted, and the trial court agreed, that Arnold was an employee terminable "at will." The court also found no evidence of communication about Arnold by any DCI employee outside of privileged communications within the company. The court granted summary judgment for DCI. For reasons given below, we affirm.

In December, 1983, Gary Arnold was unemployed and looking for work. Representatives of DCI contacted Arnold about the possibility of working for the company because DCI was interested in opening a clothing line and Arnold had some experience in that area. Informal discussions were held and Arnold made inquiries into salary and benefits. As a result of those discussions, Arnold agreed to work for DCI beginning in January of 1984. There was no agreement as to the length of time Arnold would be employed by DCI.

Arnold was formally hired by DCI on January 3, 1984, and, as a new employee, was given a briefing by a Mr. Morris, the personnel manager. During that briefing Arnold received an employee's handbook. Morris read the cover page statement from the handbook to Arnold.[1] Morris explained that the statement was a "disclaimer" and that the handbook was not a contract. At Morris' request, Arnold signed the cover of the handbook, below the "disclaimer" statement read to him. Mr. Morris also had Arnold sign a "Confidential and Noncompetition Agreement" where Arnold agreed not to disclose confidential information. Arnold began work immediately on some special projects. He later received laudatory evaluations from his superiors. In August of 1984, Arnold received a substantial salary increase and was assigned to manage the marketing division, printing and advertising plant. In December, 1984, Arnold was relieved of his management duties and was re-assigned back to special projects. During that same month, Arnold received a Christmas bonus. On January 16, 1985, Arnold's employment with DCI was terminated by his supervisor, on orders from Michael Ferguson, then the executive vice-president of DCI. Mr. Ferguson ordered the termination after receiving information that Arnold had been discussing confidential DCI business with non-DCI

---

1. The cover page read to Arnold contained the following statement:

    This handbook is not an employment contract, and an employee can be terminated at any time. The Personnel Department has explained the contents of the employee handbook to me.

people. Following termination of his employment, Arnold filed this suit.

On appeal from the summary judgment for DCI, we are presented with the following questions: Was there any genuine issue before the district court as to whether Arnold had an enforceable employment contract with DCI and if so, was his discharge from employment a wrongful breach of that contract? Also, as a result of post-termination publication of the reason for his discharge, was Arnold defamed and was his privacy invaded?

The principles applicable to motions for summary judgments, in cases where jury trials have been requested, and for appellate review of such judgments, were recently stated by our Supreme Court in *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986). There the Court observed:

A motion for summary judgment is proper only when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). When the motion is supported by depositions or affidavits, the adverse party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e). The latter requirement, however, does not change the standards applicable to the summary judgment motion. *Central Idaho Agency, Inc. v. Turner*, 92 Idaho 306, 310, 442 P.2d 442, 446 (1968). Those standards require the district court, and this Court upon review, to liberally construe the facts in the existing record in favor of the nonmoving party, and to draw all reasonable inferences from the record in favor of the nonmoving party. *Anderson v. Ethington*, 103 Idaho 658, 660, 651 P.2d 923, 925 (1982). In this process the Court must look to the "totality of the motions, affidavits, depositions, pleadings, and attached exhibits," not merely to portions of the record in isolation. *Central Idaho Agency*, supra, 92 Idaho at 310, 442 P.2d at 446. Circumstantial evidence can create a genu-

ine issue of material fact. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 868-69, 452 P.2d 362, 365-66 (1969). "[A]ll doubts are to be resolved against the moving party." *Ashby v. Hubbard*, 100 Idaho 67, 69, 593 P.2d 402, 404 (1979). The motion must be denied "if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable [people] might reach different conclusions." *Id.*

110 Idaho at 469-70, 716 P.2d at 1238-39. With these principles in mind, we turn to the issues before us.

I

■ Arnold offered no evidence to the district court to show that his employment with DCI was for a specific period. Instead, Arnold asserted that the employee handbook and a management handbook also given to him became a part of an employment contract and that DCI is liable for terminating his employment without legitimate cause.

In order to reach the questions posed by Arnold we must determine as a preliminary matter whether Arnold can overcome the DCI defense that he was an employee "at will" and subject to discharge at any time. Our Supreme Court has held:

The rule in Idaho, as in most states, is that unless an employee is hired pursuant to a contract which specifies the duration of the employment, or limits the reasons for which the employee may be discharged, the employment is at the will of either party, and the employer may terminate the relationship at any time for any reason without incurring liability. *See Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977) and the cases cited therein. The only general exception to the above rule is that an employer may be liable for wrongful discharge when the motivation for discharge contravenes public policy. *Jackson, supra.*

*MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 589, 701 P.2d 208, 209 (1985).

There is no evidence before us to show that Arnold was hired for a specific period. Even if we accept Arnold's assertions that the handbooks did constitute an element of the contract, the management handbook did not limit the reasons for employee discharge. That handbook contains a section 801, entitled behavior of employees, which states:

It is the policy of the Company that certain rules and regulations regarding employee behavior are necessary for the efficient operation of the Company and for the benefit and protection of the rights and safety of all. Conduct that interferes *with operations*, brings discredit on the Company, or is offensive to customers or fellow employees *will not be tolerated.* [Emphasis added.]

Section 801(2) then provides a list of prohibited conduct stating:

The following conduct is prohibited and will subject the individual involved to disciplinary action up to and including termination ... [Then listing various grounds].

Section 801(3) provides:

The above list is illustrative of the type of behavior that will not be permitted, *and is not intended to be all-inclusive.* Any questions in connection with this Policy should be directed to the Personnel Manager. [Emphasis added.]

The language of section 801(3) is almost identical to language in an employee's contract found in *Jones v. E G & G Idaho, Inc.,* 111 Idaho 591, 726 P.2d 703 (1986). The Supreme Court there held "[a]s this provision is not 'all-inclusive' it clearly does not limit the reasons for discharge to those enumerated." Jones at 594, 726 P.2d at 706. The employees in *Jones* were thus held to be "at will."

Finally, there is no assertion by Arnold, nor does the record suggest, that his termination contravened any public policy. Under this analysis it is clear that the handbooks Arnold seeks to have considered as a part of his employment contract re-affirm his "at will" employment status.

■ There is also the positive testimony from the affidavit of Mr. Morris and the other evidence in the record, making it clear that DCI required prospective employees to acknowledge that they served at the pleasure of the company. The evidence showed that Arnold had the disclaimer statement read aloud to him and that he signed the cover page containing the disclaimer statement. In the summary judgment proceeding Arnold responded only that he did not recall this event.

Arnold cannot avoid the positive testimony of Mr. Morris regarding the reading and signing of the cover page of the employee handbook, simply by alleging a lack of recollection. Such a negative allegation is insufficient to present a genuine issue of fact that will preclude a summary judgment. *Otis Elevator Company v. Valley National Bank,* 8 Ariz.App. 497, 447 P.2d 879 (1968). I.R.C.P. 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations of denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

As we observed in *Barlow's, Inc. v. Bannock Cleaning Corp.,* 103 Idaho 310, 314, 647 P.2d 766, 770 (Ct.App.1982):

Affidavits containing general or conclusory allegations, unsupported by specific facts, are not sufficient to preclude entry of a summary judgment where, as here, the opposing affidavits set forth specific and otherwise uncontroverted facts. *See Roper v. Elkhorn at Sun Valley,* 100 Idaho 790, 605 P.2d 968 (1980); *Casey v. Highlands Ins. Co.,* 100 Idaho 505, 600 P.2d 1387 (1979).

There is no evidence that there was an express or implied agreement by DCI to terminate Arnold only for cause. Arnold offers only his subjective understanding of conversations concerning salary and benefits held with DCI agents in December of 1983, yet there was no testimony by Arnold

of any agreement with DCI's representatives, derived from those conversations, that Arnold could be discharged only for cause. Based upon the rule expressed in *MacNeil, supra,* we hold that Arnold was an employee at will who could be discharged by DCI without cause.

As part of his contention of wrongful breach of contract Arnold maintains that DCI failed to comply with company policy procedures prior to termination of his employment. The management handbook outlined several steps in disciplinary procedure which progressively included: discussion of the matter with the employee; issuance of a reprimand and a warning to the employee; issuance of additional reprimands and warnings or suspension. The procedure addresses serious misconduct:

> In cases involving serious misconduct, such as a violation of law, the procedures contained in Comments (1), (2), and (3), above, shall be disregarded. The supervisor shall suspend the employee immediately and, if appropriate, recommend termination of the employee.

In the section entitled "Grievance Procedure" the various steps an employee may take to appeal a management decision are listed. The final appeal steps are:

> (6) If the aggrieved employee is not satisfied with the department head's decision, he or she will be permitted to appeal to the next step in the grievance procedure.
>
> (7) A representative of top management will discuss the matter with the employee after reviewing the grievance, the facts as recorded, and the decisions of the supervisor and the department head. *A final decision* will be communicated to the employee within a reasonable time[.] [Emphasis added.]

After Arnold was terminated, he requested and received an audience with Michael Ferguson at which time Ferguson personally confirmed Arnold's termination. Under the management handbook this amounted to a final decision. Further, although Arnold was terminated by a lower-level manager, the decision to terminate came from Ferguson. In *Jackson v. Minidoka Irriga-*

*tion District,* 98 Idaho 330, 563 P.2d 54 (1977), an employee was terminated by a board of directors. The employee handbook allowed a terminated employee to seek a hearing before the board. The board denied the employee's request. The Court stated:

> The handbook only provides for a hearing before the Board when an employee has been discharged by the manager. The purpose behind this section seems clear, for it confirms the authority of the Board to supervise actions of the manager and prevents him from arbitrarily firing otherwise valuable employees for personal reasons. The handbook does not, however, provide for a hearing when an employee is discharged directly by the Board, as is the case here. Appellant, therefore, was not even entitled to the hearing which was held and cannot now be heard to complain that it was not adequate.

*Jackson,* at 334, 563 P.2d at 58.

Constrained by *Jackson,* we conclude that because the decision to terminate Arnold actually came from "top management," the grievance procedures outlined in the management handbook were satisfied and Arnold's assertion to the contrary is without merit.

II

Arnold next contends that, as a result of post-termination publication of the reason for dismissal, he suffered defamation of character and an invasion of his privacy. The only statements alleged by Arnold to be defamatory are those purportedly made by a manager, Neil Clements, to an employee, Rhonda Terry, shortly after Arnold was terminated. The district court found that DCI had a legitimate interest in stressing to employees the importance of complying with their agreement of maintaining confidentiality, and that the communication therefore was a qualified privilege. RESTATEMENT OF TORTS 2d § 596 (1976). We find this analysis persuasive. There was no evidence offered by Arnold to show that the statements by Clements were made in bad faith, without

belief in the truth of the matter communicated or with a reckless disregard of the truth or the falsity of the matter. *Barlow v. International Harvester Co.*, 95 Idaho 881, 892, 522 P.2d 1102, 1113 (1974). There was no showing of any other abuse by DCI personnel that might cause loss of a qualified privilege. *See generally* RESTATEMENT OF TORTS 2d § 589–605A (1976). Beyond that one discussion between Clements and Terry, there was no showing by Arnold of any release of information by DCI concerning his termination.[2] We conclude the trial court did not err in granting summary judgment dismissing the defamation and invasion of privacy claims.

The judgment of the district court is affirmed. Costs to respondent, DCI. No attorney fees awarded.

BURNETT and SWANSTROM, JJ., concur.

---

**2.** Aside from the privileged statement, we note the only other evidence offered suggests that Arnold alone published the reason for his termination to third parties.