754 P.2d 1184

**Richard K. SMITH and Janice L. Smith, Plaintiffs–Respondents,**

v.

**Joyce PRAEGITZER, Defendant–Appellant.**

No. 16420.

Supreme Court of Idaho.

April 22, 1988.

John A. Doerr of Doerr & Trainor, Twin Falls, for defendant-appellant.

Randolph Stone of Parsons, Smith, Stone & Fletcher, Burley, for plaintiffs-respondents.

## ORDER DENYING PETITION FOR REVIEW

The Respondents having filed a PETITION FOR REVIEW on February 17, 1988 and supporting BRIEF on March 2, 1988, of the Court of Appeals' Opinion released January 28, 1988; therefore, after due consideration,

IT IS HEREBY ORDERED that Respondents' PETITION FOR REVIEW be, and hereby is, DENIED and the dissent on Denial of the Petition for Review by BISTLINE, J., be, and hereby is, RELEASED.

BISTLINE, Justice, dissenting from denial of Petition for Review.

The case which the Court does not deign to review is procedurally strikingly similar to *Harvey v. F.B. Truck Line Company and Charles MacGuinnis*, 115 Idaho ___, 767 P.2d 254 (1987), presently pending in this Court on a petition for rehearing. This Court's opinion issued in July of 1987 and at this time is found only in 87 ISCR 1239. The similarity mentioned is found by going to the dissenting opinion of Chief Justice Shepard in *Harvey*, and in particular his discussion therein of the *Mann* case, *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194 (1974). *Mann* was a personal injury case wherein the plaintiff's verdict was set aside on defendant's motion for judgment n.o.v. In *Harvey*, too, it was the defend-

ant's verdict which was set aside. In the case we are asked to review here, the jury's verdict was for the defendant by reason of an assessment of equal 50 percent causal negligence to plaintiff and to defendant. There followed plaintiff's motion challenging the sufficiency of the evidence to substantiate finding of any plaintiff negligence.

In a well-reasoned memorandum decision, appended hereto, the trial judge set aside the verdict and ruled that the defendant's evidence was not substantial enough to justify the jury in assessing any negligence on the part of the plaintiff.

On defendant's appeal the case was assigned to the Court of Appeals, and decided by opinion dated July 31, 1987, and by a substitute opinion dated January 28, 1988, 113 Idaho 887, 749 P.2d 1012 (Ct.App.1988). The Court of Appeals in both opinions cited and looked to *Mann* for guidance on the validity of the trial court's ruling, "All that is required is that the evidence be of such sufficient quantity and probative value that reasonable minds *could* conclude that the jury's verdict was proper." *Mann v. Safeway Stores, Inc., supra*, 95 Idaho at 736, 518 P.2d at 1198. (Emphasis in original.)

So far, so good.

Notwithstanding that the plaintiff's case was established by direct evidence presented at trial, the Court of Appeals, in making its review of the record on the correct premise that it "will draw all inferences from the evidence in a light most favorable to Praegitzer (defendant)," proceeded to allocate to her inferences that her speed was 20 to 25 m.p.h., her vision was impaired by sunlight, and she did not accelerate or veer toward plaintiff [whom she never admitted seeing until just prior to impact], upon which slender reeds it further presumed or assumed as follows, and to my own singular amazement:

From this evidence *it is legitimate to infer that Smith misjudged the distance of Praegitzer's vehicle. Further, it is reasonable to infer that Smith acted improperly by failing to remain vigilant in assessing the hazard of an approaching vehicle.* Based on these

determinations, the jury could have found that Smith failed to yield the right-of-way to a vehicle which posed a threat of imminent danger. 113 Idaho at 890, 749 P.2d at 1015. (Emphasis added.)

While there certainly is some Idaho case-law which holds that the non-moving party is given the benefit of a favorable interpretation and application of the evidence, and inferences which can be legitimately drawn therefrom, I am presently unaware of any cases which authorize *the drawing of adverse inferences against the moving party's evidence.* If there is such a case, it should be brought forth and summarily executed. Be that as it may, here it is readily concluded that it was only under that sort of hypothesis that the Court of Appeals could rule:

> Based on our review of the evidence we cannot agree with the district judge that reasonable jurors, given the evidence and instructions we have described, could only have concluded that Praegitzer was one hundred percent at fault. A conclusion that Smith was also negligent is reasonable and is supported by substantial and competent evidence. We hold that reasonable minds could conclude that the jury's verdict was proper. 113 Idaho at 890–91, 749 P.2d at 1015–16.

As appears to this humble jurist, the impermissible inference drawn against Smith's evidence were facilely converted into evidence.

Time constraints do not allow me to write a decision *solemente* purporting to decide upon the merits of the decision of the Court of Appeals. The decision which this Court is required to make, however, is whether to grant review in order that the merits should be reached after further briefing by the parties. The inquiry here narrows down to deciding whether well-established case law is at risk of becoming confused if the Court of Appeals' opinion is left to stand, which in my view readily seems so simply by weighing into the equation the excerpts from *Mann* which the Chief Justice utilized in his *Harvey* dissent:

> In my opinion, *Mann v. Safeway Stores, Inc.,* 95 Idaho 732, 518 P.2d 1194

(1974) is the seminal case regarding the duties of a trial court when faced with a motion for a judgment n.o.v. In *Mann,* the Court, per Donaldson, J., reviewed the different tests found in earlier opinions of the Court, and "... concluded that the proper test ... is, a motion for judgment n.o.v. should not be granted when there is substantial competent evidence to support the verdict of the jury." The Court in *Mann,* 95 Idaho at 736, 518 P.2d at 1198, continued:

> By substantial, it is not meant that the evidence need be uncontradicted. All that is required is that the evidence be of such sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper. It is not necessary that the evidence be of such quantity or quality that reasonable minds must conclude, only that they could conclude. Therefore, if the evidence is so weak that reasonable minds could not reach the same conclusion the jury has, the motion for judgment n.o.v. is properly granted.

*Mann* has been approved, followed and applied in *Hibbler v. Fisher,* 109 Idaho 1007, 712 P.2d 708 (Ct.App.1985); *Brand S Corporation v. King,* 102 Idaho 731, 639 P.2d 429 (1981); and *Smith v. Great Basin Grain Co.,* 98 Idaho 266, 561 P.2d 1299 (1977).

\* \* \* \* \* \*

As stated by the trial court, and also by the majority opinion, there was no direct evidence that MacGuinnis switched trailers. As indicated, MacGuinnis testified as to his actions from the time he picked up the Montgomery trailer until the time of the accident, and no switching of trailers was indicated in that testimony. Hence, the argument that the trailers were switched rests on no evidence, substantial or otherwise, but rather only on an inference which arises from the testimony of two witnesses, each identifying the trailer as being of a different manufacturer. Judge Durtschi identified that inference as resting on "the slender thread of an uncorroborated assump-

tion," and "pure speculation as to the circumstances and reason for the switching." As correctly quoted by the majority, Judge Durtschi stated:

> The record is totally silent as to why the supposed two switches were made, when they were made, where they were made, or where the phantom trailmobile trailer came from or what happened to it. It seemingly appeared at the Stinker Station from nowhere and thereafter disappeared, never to be seen again so far as this trial record is concerned.

The trial judge then stated: "Hence, I conclude that the jury's finding in answer to question no. 3 is not supported by substantial evidence and is in fact contrary to the great weight of the evidence."

Hence, I would hold that the trial judge utilized the correct standard in ruling upon the motion for judgment n.o.v., *i.e.*, that the jury's finding was not supported by substantial evidence as set forth in *Mann v. Safeway, supra*, and its progeny. 87 ISCR 1255, 1256.

As is well pointed out in the plaintiff's brief, appended hereto, filed in support of its petition for review, there is good reason to wonder after today how *Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979) can co-exist with the Court of Appeals opinion in *Smith v. Praegitzer*. In *Owen*, the driver defendant wife testified to her belief that her vehicle tires had not crossed a groove two and one-half feet from the edge of the pavement prior to impact with the defendant's bicycle. In resisting a plaintiff's motion for a directed verdict, she requested that the truth of her belief must be assumed and she wanted to attach an inference therefrom that her vehicle could not have struck the decedent Randall Owen if he, in fact, were riding as near the right side of the roadway as practicable. The Court reasoned as follows:

> There is no sure way to distinguish between a legitimate inference to which a party is entitled and an unreasonable one

to which he is not entitled. (cites omitted.) It is well established that an inference would be unreasonable if it would permit a jury to base its verdict on mere speculation and conjecture. (cites omitted.) Here, the inference sought by appellants would permit a jury to indulge in speculation and conjecture. *Owen v. Burcham*, 100 Idaho 441, 448, 599 P.2d 1012, 1019.

This Court, in rejecting the plaintiff's petition for review should be extremely aware that in the *Owen* case there was no eyewitness, *whereas in this case there was an independent eyewitness who testified at trial.*

The serious problem which arises when review of a Court of Appeals' opinion is sought *and denied* is that the trial bench and bar will quite naturally see the denial as tantamount to this Court's approval of the principles of law which have been announced by the Court of Appeals' opinion. In *Mabe v. State*, 86 Idaho 254, 262, 385 P.2d 401 (1963), Justice McFadden in writing for a unanimous court, the membership of which did not include any of us now constituting the Court, was very careful to explicitly state the true rule:

> A motion for judgment notwithstanding the verdict under I.R.C.P. 50(b) similarly to the previous rule, *admits the truth of the adversary's evidence* and every inference of fact which may be legitimately drawn therefrom and should be granted only when there is absence of evidence to support the verdict. *Hendrix v. City of Twin Falls*, 54 Idaho 130, 29 P.2d 352; *Hobson v. Security State Bank*, 56 Idaho 601, 57 P.2d 685; 2B Barron & Holtzoff, Federal Practice and Procedure, § 1079, p. 413 and § 1075, p. 375. *Mabe v. State*, 86 Idaho 254, 262, 385 P.2d 401, 406 (1963) (emphasis added).

Obviously, so it seems to me without any benefit of the thinking of my colleagues, the Court of Appeals' opinion which is not being reviewed does violence to that clear statement of the rule.

## APPENDIX A

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF MINIDOKA

Case No. 8641

Richard K. Smith and Janice L. Smith, Plaintiffs,

v.

Joyce Praegitzer, Defendant.

## MEMORANDUM OF OPINION ON MOTIONS FOR JUDGMENT N.O.V. AND MOTIONS FOR NEW TRIAL

The above entitled case came before the Court on a jury trial on December 17, 1985 at Rupert, Idaho. The case involved an accident in Burley, Idaho between Mr. Richard Smith and an auto driven by the Defendant, Mrs. Joyce Praegitzer. After the presentation of evidence by both Plaintiff and Defendant and after instructions and argument the jury rendered a special verdict finding 50% negligence on the part of both parties, thus, precluding the Plaintiff from recovery. The Plaintiff now argues that the evidence does not support the verdict on the jury's findings of negligence on the part of the Plaintiff.

Based upon the following analysis the Court has concluded that a Judgment n.o.v. on the question of fault is appropriate and that a new trial on the issues of damages be had. The principles the Court must apply to a motion for Judgment n.o.v. are clearly set forth in recent Idaho Supreme Court Decisions. First, as the Court stated in *Brand S Corporation vs. King*, 102 Idaho 731 [639 P.2d 429], "A judgment n.o.v. should be granted when there is no substantial, competent evidence to support the verdict of the jury". Secondly, in the case of *Owen vs. Burcha [Burcham]*, 100 Idaho 441 [599 P.2d 1012], the Court stated that on a motion for a judgment not withstanding the verdict the moving party admits the truth of the adverse evidence and every interference which may be legitimately drawn therefrom.

In the same case the Court stated "to be 'substantial' the evidence need not be un-contradicted. All that is required is that there be evidence of such sufficient quality and probative value to support the party against whom the motion is directed so that reasonable minds could conclude that there is evidence upon which the jury could properly find a verdict for that party".

In the case at hand, the only evidence submitted by the Defendant was testimony of the Defendant and such evidence the Defendant may have adduced on cross-examination of the Plaintiff's witnesses.

The Defendant testified that she did not see the Plaintiff until just at the second her vehicle struck the Plaintiff, thus, the Defendant did not introduce any direct evidence in her case in chief of negligence on the part of the Plaintiff. Therefore, the only negligence the jury could have found on the part of the Plaintiff would have come from the Plaintiff's own evidence. The Plaintiff testified substantially as follows: That on the 20th day of August, 1985 he followed his normal practice of arising early in the morning to jog. He left his home at approximately 6:45 o'clock p.m. on a typical summer day; he recalled that the morning was humid and the sky was overcast. Mr. Smith was jogging with his shepherd dog on a leash. Mr. Smith followed his usual jogging route which led him around the area of his residence on residential streets. Approximately 25 minutes after beginning his morning jog he came to the intersection of Miller and 24th Street; Mr. Smith was jogging south on Miller Avenue, a residential street within the City of Burley. Twenty-fourth Street at the location of its intersection with Miller Street is also in a residential area, although there is a church on the north corner of Miller Avenue and 24th Street. As Mr. Smith approached the intersection of Miller and 24th Mr. Smith noticed a car coming north on Miller Street across the intersection from him. Previous to seeing the car, Mr. Smith had been jogging on the left side of Miller Street, when he saw the car Mr. Smith moved to the right side of Miller Street. Mr. Smith did not jog on the sidewalks but in the parking areas of the streets, as much as he could. According to

Mr. Smith's direct testimony, from ten to twelve feet from the actual intersection of Miller Street with 24th Street, Mr. Smith glanced to his right and saw an automobile approximately 300 yards distance.

Mr. Smith continued to adhere to this observation under cross-examination although there were attempts made by Counsel to suggest Mr. Smith may have been incorrect in this testimony. Mr. Smith determined that the approaching vehicle on 24th Street was not a threat to him and he entered the intersection. There is a stop sign on Miller Street, thus, 24th Street may be considered a more heavily travelled street than Miller Avenue.

Mr. Smith testified, on direct, that he jogged at a fairly slow rate of speed approximately a ten minute mile. He testified that as he entered the intersection he was probably at that same speed, although perhaps a little slower. At the time Mr. Smith entered 24th Street he was parallel within approximately 3 feet of the west curb of Miller Street. As he entered 24th Street he was looking to the left. He next recalls hearing a motor accelerating. At that point he glanced to the right and found an auto bearing down on him. Mr. Smith started yelling and waving his arms at the automobile and began running faster. The auto began drifting right following Mr. Smith. Mr. Smith did have time to turn and face the automobile with his arms out in an attempt to push himself up onto the automobile. Mr. Smith further testified that he was able to observe the Defendant driving the automobile and that she had a look of total surprise just at the point of impact. The accident occurred almost all the way across the north part of the intersection.

In addition to the Plaintiff's testimony the Plaintiff called the driver of the vehicle who Mr. Smith had observed approaching the intersection of Miller and 24th Street heading to the north. Mr. Terry Billingsley, the driver of the automobile stated as he approached the stop sign on Miller and 24th heading north he observed Smith jogging. He observed Mr. Smith to be close to the right hand curb. Mr. Billingsley testified he stopped at the stop sign, looked both ways and could see no vehicles coming but waited for Mr. Smith to come across the intersection. Again looking onto 24th Street, he observed the Defendant's car traveling east on 24th but did not think the Defendant's car presented a danger to Mr. Smith. However, shortly afterwards Mr. Billingsley observed the accident occur basically in front of his vehicle. He saw Mr. Smith yell, wave his arms, and turn towards the vehicle. Mr. Smith, according to Mr. Billingsley, was almost across the intersection into the north parking lane. He did observe the Defendant's vehicle veer to the right, towards Mr. Smith. He further testified that had the vehicle continued in a straight line in the traffic lane there would not have been a collision between the vehicle and Mr. Smith. On cross-examination Mr. Billingsley indicated he did not know how fast the Defendant's vehicle was going but he did not think it was exceeding the speed limit although he was not a good judge of speed.

The Plaintiff also introduced the responding Police Officer, Officer Lonnie Richardson, who testified concerning statements made by the parties. The Defendant stated she never saw the jogger until the point of impact. Mr. Smith made the statement he had seen the vehicle and felt he had plenty of time to cross the intersection.

Officer Richardson was also told by the Defendant that her vision was obstructed by the bright sunlight, however, his recollection was that the day was cloudy. Officer Richardson also testified that there was very little physical evidence and that he could not determine the existence of any skid marks relating to this accident. Officer Richardson stated that when he arrived at the accident Mr. Smith was apparently in the same position as he was immediately following the accident. Mr. Smith's head was three feet from the curb with his head pointing to the stop sign on Miller Street on the north side of 24th Street. The Officer indicated there was approximately an eight foot parking lane at that point and that Mr. Smith was completely in the parking lane. The speed limit along that stretch of high-

way according to Officer Richardson was 25 miles per hour.

The Plaintiff's then called Mr. Les Stimpson, who is a State Patrolmen who has had training and testified as an expert witness in accident reconstruction. Mr. Stimpson's testimony primarily centered on the point of impact. Mr. Stimpson testified that in his opinion the point of impact would have been approximately nine foot off of the north curb of 24th Street. He could not determine a north-south point of impact. In both direct and cross-examination, there was a great deal of testimony concerning the facts upon which he based his opinions. He stated many times there were many variables that would affect his decision. Of some concern to both parties, was from Mr. Stimpson's ultimate conclusion another conclusion could be reached that the Defendant's vehicle would have been going at a speed of 37 to 42 miles per hour.

The Plaintiff's also called Mr. Smith's personal physician who gave no testimony concerning the facts surrounding the accident only testimony concerning the extent of Mr. Smith's injuries.

Other evidence introduced during the course of the trial included photographs taken by the Plaintiff and a drawing of the intersection prepared at the request of the Defendant by a licensed engineer. The Plaintiff, on cross-examination was requested to make several points on the drawing, as were several of the other witnesses. None of the witnesses had viewed the drawing prior to trial. The Plaintiff also introduced weather reports indicating that on August 20, 1985 there was a broken sky cover.

There was virtually no conflicting essential evidence. The only area of conflict centered around Mr. Stimpson's testimony and various results which could be reached by changing his assumptions. This is not direct evidence. Further Mr. Stimpson stated several times there were too many unknown variables to reach a firm conclusion as to reconstructing the accident. Thus, the jury had few if any facts to resolve.

Applying the law to the facts as they were introduced in this case, the Court cannot conclude that there is substantial evidence to support the verdict of 50% negligence on the part of the Plaintiff. The Court has noted there is no direct evidence of the Plaintiff's negligence. However, there is certainly a great deal of direct evidence of the Defendant's negligence. By the Defendant's own testimony, she did not see Mr. Smith until her car collided with him. For the jury to have determined negligence on the part of Mr. Smith they would have had to have made inferences. As the Court noted in the case of Owen vs. Burcham (Supra), there is no way to distinguish between a legitimate inference to which a party is entitled and an unreasonable one to which he is not entitled. However, the Court further stated it is well established an inference would not be reasonable if it would permit a jury to base it's verdict on mere speculation and conjecture. In this case the argument of the Defendant is basically that Mr. Smith must have been negligent for the accident to have occurred. However, that overlooks undisputed, uncontradicted evidence by Mr. Smith that he did observe the Defendant's car and that the car presented no danger to him as he began crossing the intersection and that the car sped up and veered to the right striking Mr. Smith. Mr. Smith's testimony is verified and enhanced by the testimony of Mr. Billingsley, who also testified he observed the Defendant's vehicle and it did not appear to him to present a threat to Mr. Smith as he crossed the intersection, and the vehicle did veer to the right striking Mr. Smith. Further, there is physical evidence that the accident occurred in or near the parking area of 24th Street. The Defendant's argument basically as, noted by Counsel for the Plaintiff, can only be made because the Defendant did not see Mr. Smith until the accident. To allow the Defendant to thus benefit from her admitted negligence is inappropriate. The Court could attempt to speculate as to how the jury reached the verdict from the facts presented but that serves no purpose. Defense Counsel when asked what evidence or facts inferred from the evidence sup-

ports the verdict could only point to the accident itself and in essence argue it is unreasonable to think a pedestrian cannot avoid an accident with a car. Basically, Counsel argued a pedistrian is in a much better position to stop when he perceives he is in danger from an automobile than an automobile is. That may be true if the driver of the automobile is fulfilling his duty which here, clearly, the driver was not. The Court must conclude that the jury must have entered into speculation and conjecture to find Mr. Smith negligent.

Thus, in the Court's view, the Plaintiff is entitled to a Judgment n.o.v. on the question of the Plaintiff's negligence because there is not substantial competent evidence for the jury to have found the Plaintiff negligent.

Since the jury acted properly in response to the directions of the special verdict form and did not consider the question of damages in this case the Plaintiff's motion for a new trial on the question of damages must also be granted.

DATED this 18th day of February, 1986.

/s/ John F. Varin
John F. Varin
Magistrate Judge acting as District Judge

## APPENDIX B

## BRIEF IN SUPPORT OF PETITION FOR REVIEW

### STATEMENT OF FACTS

At approximately 7:30 A.M. on Saturday, August 20, 1983, Smith was jogging in the City of Burley. At the intersection of 24th Street and Miller Avenue he was struck by an eastbound vehicle being operated by Praegitzer. The entire accident was witnessed by Terry Billingsley who was stopped at a stop sign waiting for Smith to cross the street. Tr. Vol. I, p. 24 to 30.

Smith testified directly as to the circumstances surrounding the accident. He testified that as he approached the intersection he observed the Praegitzer vehicle approaching from his right at a distance of approximately 300 feet. The vehicle was far enough away so that it did not pose an apparent threat. He entered the intersection, proceeding straight across toward the opposite curb line.

As Smith entered the intersection he looked to the left and did not observe any traffic coming from that direction. As he continued a few more steps into the intersection his attention was drawn by the sound of an accelerating motor. He turned to see the Praegitzer vehicle accelerating directly at him. Smith tried to get out of the way of the approaching vehicle. He could see Praegitzer's face and could see that she was totally oblivious to his presence. He also was yelling trying to get her attention. Tr. Vol. I, p. 32 to 34.

As Smith tried to escape, the Praegitzer vehicle seemed to be drifting with him, as though she was following him. Smith made it almost completely across the street before he was struck. Just before impact he could see Praegitzer's face registering total surprise. Tr. Vol. I, p. 32 to 36.

Terry Billingsley also testified directly as to the circumstances of the accident. He was perhaps in the best position to observe the accident. Billingsley testified that as he pulled up to the stop sign at the intersection of Miller and 24th he observed Smith and his dog approaching from the other direction. At that time Billingsley looked both directions and didn't see any vehicles approaching on 24th. Billingsley waited for Smith to cross the intersection. Tr. Vol. I, p. 85 to 86.

As Billingsley waited for Smith, he looked again and this time saw the Praegitzer vehicle approaching. At that time Smith was coming out into the intersection. Billingsley did not feel that Smith was in any danger at that time because there appeared to be ample time for him to come across the road. Billingsley then looked to the right, and when he looked back to the left he observed the accident itself. He observed Smith yelling and trying to escape the Praegitzer vehicle. He observed Smith escape the traffic lane into the parking lane. He observed the Praegitzer vehicle veer towards the right striking Smith in the parking lane. Finally, Billingsley

testified that he did not think the accident would have occurred if Praegitzer had simply driven in a straight line in the traffic lane. Tr. Vol. I, p. 86 to 88.

Praegitzer's testimony about the circumstances of the accident was greatly limited by her lack of attentiveness. She didn't observe Smith until the moment of impact. Even that observation was so limited that she didn't know whether he had come from the right or the left, she was unaware that he was jogging, she was unaware that he was accompanied by a dog and she didn't testify about observing the Billingsley vehicle. Tr. Vol. I, pg. 157 to 160.

Because of her lack of observation, Praegitzer offered no testimony on how far she was from the intersection when Smith entered. Nor of the point of impact. She did testify to the absence of a recollection of turning to the right and provided an estimate of her speed based upon the fact she "knew it was a residential area; and that's the posted speed limit. I generally don't speed." Tr. Vol. I, pg. 49 L. 13 to L. 22. Praegitzer had not looked at her speedometer and did not express an opinion of speed based upon observations on the date of the accident.

## BASES FOR REQUEST FOR REVIEW

Smith requests review by the Supreme Court for the following reasons:

1. The Court of Appeals decided a question of substance not heretofore determined by the Supreme Court, without resolving the apparent conflict between the various statutes dealing the duties and obligations of drivers and pedestrians in unmarked intersections.

2. The Court of Appeals has decided a question of substance not in accord with applicable decisions of the Idaho Supreme Court with respect to what constitutes substantial competent evidence supporting a jury verdict.

3. The Court of Appeals has rendered a decision in conflict with a previous decision of the Court of Appeals on the issue of whether a witness's testimony of the lack of a recollection can give rise to a legit-

imate inference of sufficient substance to support a jury verdict in the face of direct competent evidence to the contrary.

## ARGUMENT

The propriety of the judgment notwithstanding the verdict turns on two questions. First, was there substantial competent evidence which could support a verdict finding Smith negligent in entering and proceeding through the intersection. Secondly, even if the answer to the first question is yes, was that negligence a proximate cause, or a cause in fact, of the accident in light of Smith's effort to escape, which was defeated by Praegitzer's conduct.

## I. ENTERING INTERSECTION

The direct testimony clearly established no negligence on the part of Smith in entering the intersection. Sections II and III of the Respondents brief outline the evidentiary and legal basis supporting the Judgment N.O.V. at length. Rather than reiterate it will be summarized here allowing reference to the Respondents brief for more detail.

### A. Speculation and Inference Upon Inference

The direct testimony of both Smith and Billingsley established that at the time Smith entered the intersection the Praegitzer vehicle was far enough away not to pose a threat. Both specifically established the distance of the Praegitzer vehicle. The foundation for this testimony was the actual visual observations by both witnesses.

Praegitzer could not directly testify as to her location when Smith entered the intersection, having no recollection of seeing Smith. Praegitzer also could not directly testify as to her speed on the date and time in question. The only evidence offered by Praegitzer was an estimate of her speed based upon the fact that she generally didn't speed. From this she asked the court to infer her speed, from that inference draw a further inference as to relative location of her vehicle and finally to draw an inference that Smith and Billingsley

both misjudged the distance of Praegitzer's vehicle.

Praegitzer's testimony was grossly inadequate to constitute substantial evidence to overcome direct, competent testimony as to the facts. Not only was Praegitzer unable to state her speed based upon an actual observation of her speedometer, she failed to even express an opinion as to her speed based upon observations and perceptions occurring the date of the accident. To allow an estimate of speed based only upon the statement that she normally didn't speed is purely speculation. She had no real idea whether or not she was speeding on the day in question.

The Court of Appeals accepted the Defendant's argument and stated that that testimony was sufficient to support the jury verdict. In doing so, the Court of Appeals implicitly over-ruled *Owen v. Burcham*, 100 Idaho 441, 559 [599] P.2d 1012 (1979). It also expressly overruled *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 518 P.2d 1194.

In *Owen v. Burcham*, as in this case, the Defendant admittedly hadn't seen the pedestrian prior to the accident and was unable to directly testify as to the pedestrian's location or conduct. Despite her lack of perception, Burcham attempted to weave a web of inferences to establish facts to which she could not testify directly. There, as here, the web of inferences amounted to no more than speculation. To allow unwarranted inferences to be drawn from hypothesized facts does not promote the search for truth. Praegitzer's testimony doesn't really help us know how fast she was going, or the location of her vehicle when Smith entered the intersection. It was offered in the hope of creating an evidentiary basis where she couldn't produce a real one.

It wasn't only Smith who testified directly as to Praegitzer's location, there was an independent third party on the other side of the road who saw her also. To allow direct competent testimony of an event to be ignored based upon a mere speculation creates a new and lesser standard of substantial evidence than that recognized in *Owen*.

The Court of Appeals also rejects the language of *Mann v. Safeway Stores, Inc. supra.* Praegitzer asked the court to infer that her speed was 20 to 25 m.p.h. based upon her testimony that she didn't "normally" or "generally" speed. From this inference she asked the court to draw an additional inference that her vehicle was at a distance from the intersection different from that directly testified to by Smith and Billingsley. From the second inference she asked the court to draw yet a third inference that because of the different location of her vehicle, a reasonable man would have perceived the danger and not entered the intersection. It is this third inference which she attempts to use to establish negligence on the part of Smith.

In *Mann* the Court stated:

When a Motion for judgment n.o.v. is made, the truth of plaintiff's evidence and every legitimate inference that can be drawn therefrom is admitted. (Citation Omitted) Circumstantial evidence can be used to prove one's case. (Citation Omitted) However, if an inference drawn from circumstantial evidence is to be made the basis of further inference, the first inference must be established to the exclusion of all other reasonable inferences. (Citations Omitted)

The first inference which Praegitzer asked the court to draw was not established to the "exclusion of all other reasonable inferences." Praegitzer estimated her speed based upon the fact that she did not "normally" or "generally" speed. Praegitzer did not testify that she *never* sped. A reasonable person could infer that on the date of the accident Praegitzer's speed was not "normal". Praegitzer did not rule that out, nor did any other evidence introduced at trial.

The Court of Appeals dismissed *Mann* as limiting but not prohibiting stacking of inferences, and expressed its disagreement with the rule.

### B. Conflict Between Statutes.

The opinion filed by the Court of Appeals does not resolve who had the right of way.

The intersection involved in this accident does not fit neatly into the statutes. The side of the street that Smith was on had a sidewalk, but it dead-ended in a bush before it reached the intersection. To reach the intersection a pedestrian would necessarily have to go around the bush either through the yard or along the curb. The sidewalk on the other side of the street is off-set to the west. As a result, when a pedestrian goes around the bush along the curb he has a choice of proceeding straight across the street or proceeding at an angle so as to intersect with the sidewalk on the other side. A reduced photocopy of the demonstrative exhibit showing the intersection is attached as Exhibit "A" to this brief.

Idaho Code § 49–722(1) provides that the pedestrian has the right of way when "crossing the roadway within a crosswalk." "Cross-walk" is defined by Idaho Code § 49–510 as follows:

49–510. Crosswalk.—(1) That part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or in the absence of curbs, from the edges of the traversable roadway; and in the absence of a sidewalk on one side of the roadway, that part of a roadway included within the extension of the lateral lines of the existing sidewalk at right angles to the centerline.

(2) Any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by line or other markings on the surface.

The sidewalk on Smith's side of the road dead-ended in a bush. The sidewalk on the other side of the roadway was off-set a significant difference to the west. When Smith approached the intersection at the location of the bush, Idaho Code § 49–726(2) required that he run along the curb. As he reached the intersection, Idaho Code § 49–722(5) required Smith to proceed straight across the intersection.

The nature of the intersection and the controlling statutes raise a whole series of interesting questions. Did Smith have the right of way because his location and direction were in strict compliance with the Idaho statutes? If not, if he would have moved one foot to his right so as to be in the area that would have been an unmarked cross-walk if the sidewalk would have proceeded completely to the intersection, would he than have had the right-of-way? Does a pedestrian who is in an unmarked cross-walk, but who inadvertently moves six inches past an invisible line, suddenly lose the right-of-way?

Fortunately the Legislature has provided yet another statute to clarify the situation. Idaho Code § 49–724 provides:

49–724. Drivers to exercise due care.— Notwithstanding other provisions of this title or the provisions of any local ordinance, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian or any person propelling a human-powered vehicle and shall give an audible signal when necessary and shall exercise proper precaution upon observing any child or any obviously confused, incapacitated or intoxicated person.

The Court of Appeals should have ruled Smith had the right-of-way.

## II. THE ESCAPE AND ITS FAILURE

Smith perceived the danger of the Praegitzer vehicle in time to escape. He was approximately in the middle of the intersection when he began his effort to escape. Both Smith and Billingsley directly testified as to Smith's efforts and of how the Praegitzer's vehicle veered or drifted to the right. Both testified of how Smith made it almost completely across the street into the parking lane. Billingsley testified that if Praegitzer had simply driven straight in the traffic lane there would have been no accident.

Again Praegitzer was unable to directly contradict Smith and Billingsley. Instead, she testified that she did not recollect turning to the right and invited the court and jury to infer from this absence of a recollection that she did not drift or veer to the right. This required a further inference that the testimony of Smith and Billingsley,

as to the success of his escape and the location of impact, was incorrect.

If *Owen v. Burcham, supra,* and *Mann v. Safeway Stores, Inc., supra,* were applied, this approach would qualify as mere speculation. The absence of a recollection isn't evidence of a fact. It simply means that the witness doesn't know what happened and is willing to admit it. Praegitzer also didn't recollect observing Smith enter the intersection, that there was a dog with Smith, that Smith was jogging, or that Billingsley was stopped at a stop sign on the side street. It would seem ridiculous to suggest a jury could conclude from Praegitzer's absence of recollection that Smith, the dog and Billingsley weren't there at the time of the accident.

The Court of Appeals ruled that because Praegitzer testified to the absence of a recollection that it must take as true that she did not veer towards Smith. This is directly contrary to another recent opinion filed by the Court of Appeals.

In *Arnold v. Diet Center, Inc.,* 113 Idaho 581, 746 P.2d 1040 (Idaho App.1987) the Court of Appeals also dealt with a party trying to overcome positive testimony concerning an event by stating his absence of a recollection. The Court of Appeals stated:

> Arnold cannot avoid the positive testimony of Mr. Morris regarding the reading and signing of the cover page of the employee handbook, simply by alleging a lack of recollection.

*id* at 584, 746 P.2d 1043. The rule adopted in *Arnold* is the correct rule and should be applied uniformly. Praegitzer should not be allowed to overcome positive testimony of two witness by simply asserting a lack of recollection.

## CONCLUSION

Smith was not a negligent pedestrian. He was attentive as he approached the intersection. He observed the approaching vehicle. He made a determination, corroborated by another witness on the other side of the road, that the vehicle was not a hazard to him. As he continued through the intersection he remained attentive. He perceived when the vehicle became a hazard and took steps to both escape and gain the attention of the driver of the vehicle. As was again corroborated by Billingsley, Smith successfully got out of the way of the approaching vehicle but for one serious problem, the vehicle changed direction.

Praegitzer was oblivious to the events preceding the accident. The closest thing which she could offer to direct testimony was that she recalled the sun being in her eyes. Other than that, she had no idea what had happened.

The trial court granted the judgment notwithstanding the verdict relying on *Owen v. Burcham, supra.* It seemed obvious that a person who had no recollection of the events and could not positively testify as to any significant fact was not in a position to contradict the positive testimony of two competent, credible witnesses. The controlling authority supported the trial court's decision that a party could not spin a web of inferences drawn from inferences to create by speculation facts which could not be established by direct evidence.

The Supreme Court should grant the Petition for Review.