---

## HOLIMAN *v.* ROUSH.

### Opinion delivered April 26, 1915.

SALES—RESERVATION OF TITLE—WAIVER.—A vendor of chattels waives a reservation of title when he consents to the execution of a mortgage thereon by the vendee, at least as to the mortgagee and those claiming under him, and when, in an action of replevin, the issue of waiver of title is raised, the issue should be submitted to the jury.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

#### STATEMENT BY THE COURT.

The appellee sued the appellants in replevin for certain machinery used in conducting a cotton gin, sawmill and corn mill. He alleged that he contracted to sell the machinery to Protho and W. W. Holiman, who were to conduct the business under the firm name of Protho & Holiman; that the interest of Protho passed into the hands of Holiman, by successive sales thereof through

different parties; that the machinery was taken into the possession of one J. A. Greer under a mortgage which had been executed to him; that J. A. Greer sold to W. H. Greer, who was now in possession of the machinery; that the successive vendees knew that appellee had contracted to sell the machinery to Protho & Holiman for the sum of $2,600 and that he had retained title in the machinery until the purchase price had been paid. He alleged that there remained $696.65 due on the original purchase price and that the title to the machinery was still in the plaintiff, and that he was entitled to the possession of the same. He alleged that he had been damaged in the sum of $1,000 for the unlawful detention of the machinery.

The answer denied the allegations of the complaint, and set up that appellee and one H. B. Greer bought the machinery from one Dupriest on a credit, agreeing to pay therefor the sum of $2,100, for which sum they executed their notes; that Dupriest reserved the title until the purchase money was paid; that Greer sold his interest to appellee and appellee assumed the payment of the purchase money notes; that appellee turned the property over to Holiman & Protho, who were to pay themselves $1 per day and pay the indebtedness and afterward pay appellee $500; that Protho sold his interest to Goodman, and that Goodman and Holiman executed a mortgage to J. A. Greer, dated July 19, 1911, for $696.40, evidenced by a note which W. H. Greer signed as surety, which money was used in paying off the original purchase money owing from Holiman to Dupriest; that Holiman afterward sold the machinery to W. H. Greer for the sum of $500, which money was to be applied on the note of $696.40 held by J. A. Greer.

Appellee testified that he bought the machinery in controversy from Dupriest and was to pay him $2,100 for it; that he sold the same to Holiman and Protho, they assuming to pay him $500 and appellee's indebtedness to Dupriest, making the purchase price $2,600 agreed to be paid by appellee's vendees for the machinery. The notes appellee executed to Dupriest, on which Greer was surety,

were not paid at the time appellee sold the machinery to Holiman & Protho, there being over five hundred dollars due on the same. The total indebtedness due on the machinery at the time appellee sold the same to Holiman & Protho would not exceed $1,700. Appellee entered into a contract to sell to Holiman & Protho in the fall of 1912. He knew in September, 1912, that his vendees had mortgaged the property. He stated that he had no recollection of notifying Greer that he had sold the machinery with the understanding that his vendees were to pay him out of the net earnings of the machinery. The appellee's vendees never executed any notes. It was agreed, however, at the time he sold them the property that they would sign a copy of the note appellee had executed to Dupriest. The amount of the indebtedness that appellee's vendees agreed to assume was $1,558.12.

Witness Protho, on behalf of appellants, testified that he and Holiman bought the machinery from appellee with the understanding that the machinery was to pay for itself. They were to deduct from the net earnings $1 a day for their work and pay the balance on the purchase price until it was paid out. There was no agreement with the appellee that he should reserve the title. They agreed to assume the amount of appellee's indebtedness to Dupriest, towit, the sum of $2,600, provided that amount was earned by the machinery. Witness sold his interest to Goodman in 1910.

W. W. Holiman testified that he and Protho purchased the machinery from appellee and were to assume the payment of the purchase money to Dupriest and to pay appellee, in addition, the sum of $500; that the debts they assumed had been paid. He paid part of the Dupriest note. He borrowed $900 from Greer and paid $500 of that amount on the Dupriest note and $250 on a new press, after talking with appellee about it. On March 1, 1912, they had a settlement with appellee and there was shown to be due him a balance of $696.65. Witness offered to turn the machinery over to appellee and he would not

take it back because he did not want to pay the indebtedness that was against it.

Goodman testified that he and Holiman executed a mortgage on the machinery to J. A. Greer.

J. A. Greer testified that he talked with appellee and appellee told him he had a note against the machinery that would come in ahead of his mortgage; that on account of having such mortgage he had conversations with appellee concerning it and he never made any claim of having reserved title when he sold the machinery to Protho & Holiman. Witness never heard of appellee's claiming title until this suit was instituted. Appellee knew that witness had a mortgage and wanted witness to foreclose it. Witness advanced to Goodman and Holiman money which they stated they were going to pay on the purchase money note of appellee to Dupriest for the machinery. Witness met appellee, who informed witness that he was going to bring this suit and wanted witness to work up a compromise, and told witness that he would give him $400 if witness would release his mortgage.

The appellant, W. H. Greer, testified that the machinery was turned over to him by Holiman on a debt that Holiman was due him. He knew at the time that Holiman owed appellee on the machinery. Witness was surety on appellee's note to Dupriest.

In instructions given at the instance of appellee, over objections of appellants, the court told the jury, in effect, that if they found from the evidence that appellee contracted to sell the machinery to Protho & Holiman and at the time reserved title or ownership until he was paid, and if they found appellee had not been paid, then the jury should find for the appellee, even though they should find that the machinery, since said time, had been sold or mortgaged.

Among other instructions, the court gave, at the instance of appellants, the following:

"4. The jury are instructed that although you may find from the evidence that the plaintiff at the time he sold

the property to Holiman & Protho reserved the title in himself until the payment of the purchase money, yet, if you further believe from the evidence that the property was delivered to the purchasers, and they afterward mortgaged the same in good faith to secure money to pay the indebtedness existing against it or a part thereof, and the said plaintiff, after full knowledge of the execution of said mortgage, made no objection to the same, but afterward demanded of Mr. Greer, who was the holder thereof, that he proceed to foreclose same, then this would be a ratification upon his part of the execution of said mortgage, and your verdict will be for the defendants.''

The court refused to grant appellants' prayer No. 6, as follows:

''The jury are instructed that even though you may find from the evidence that the plaintiff reserved title in himself to the property in controversy until the sale was paid for, yet if you find from the evidence that the defendants, Holiman and Goodman, mortgaged said property to J. A. Greer for money with which to pay off the Dupriest note, or if the said plaintiff received the benefits from the money so derived from said mortgage, and knew or consented to said mortgage, then your verdict will be for the defendants.''

Appellants duly excepted to the ruling of the court in refusing to grant its prayer No. 6, and make this one of the grounds in its motion for a new trial. Appellants also make the giving of appellee's prayers for instructions above grounds in their motion for a new trial.

The jury returned a verdict in favor of the appellee ''in the sum of $696.65 at 8 per cent interest from March 1, 1912, or the recovery of the machinery in controversy.'' Judgment was entered in favor of the appellee, and this appeal has been duly prosecuted.

*S. Brundidge, Jr.,* for appellants.

1. Unless the plaintiff could show by a fair preponderance of the evidence that he reserved the title to the property at the time of the sale, he was not entitled to

recover in this action. Not only has he failed to meet this burden, but all the witnesses contradict him as to any conditional sale or reservation of title.

2. The plaintiff, as appears by the undisputed testimony, never had title to the property, and, therefore, could not reserve any title.

3. If appellant had been the owner and reserved title, he is estopped by his own conduct, his failure to inform Greer of any reservation of title, his knowledge of the execution of the mortgage, his frequent insistence that Roush foreclose it, etc. 88 Ark. 106.

4. The sale was ratified by the plaintiff. *Id;* 97 Ark. 435.

5. The instructions given at plaintiff's request were erroneous in taking away from the jury the right to consider whether or not the plaintiff had ratified the giving of the mortgage. They were misleading and prejudicial and the error therein was not cured by other and correct instructions.

6. The sixth instruction requested by appellant was warranted by the proof and correctly declared the law. 87 Ark. 360; 88 Ark. 99.

*J. N. Rachels* and *John E. Miller,* for appellee.

1. The question as to whether or not there was a reservation of title was one of fact for the jury to determine from the evidence, and their verdict will not be disturbed. 106 Ark. 438; 108 Ark. 578; 164 S. W. 1134, 112 Ark. 57; 112 Ark. 507; 166 S. W. 552; 113 Ark. 400; 168 S. W. 1073, and authorities cited.

2. The evidence shows that appellee purchased the machinery from Dupriest and that at the time he sold to appellants he owed Dupriest some money on the machinery. There is no merit in the claim that because he did not fully own the machinery clear of all debts he could not reserve title in it. He had such an interest in the machinery that he could sell or mortgage. 63 Ark. 268; 66 Ark. 240; 68 Ark. 230; 92 Ark. 530; 97 Ark. 432.

3. Appellee is not estopped. There is no evidence that appellee ever assented to any mortgage being executed covering this machinery. Moreover, the court, by instruction 4, given at appellant's request, submitted their contention to the jury, and the jury by its verdict failed to find the facts to be as contended by appellants.

4. The bringing of this suit without an order of delivery and bond did not amount to an abandonment of the suit in replevin and an affirmance or ratification of the sale. The right of possession of property may be tried without the possession having been in fact changed by an order of delivery. 65 Ark. 448; Kirby's Dig., § § 6853, 6854; 85 Ark. 73; 44 Ark. 308; 30 Ark. 681.

5. The instructions given at appellee's request were not objected to on the ground that they took away from the jury the right to consider whether or not plaintiff had ratified the giving of the mortgage, etc. Appellants made no request for amendment in this particular and can not complain. Moreover, instruction 4, given by the court, fully covers this objection.

6. It was not error to refuse instruction 6, requested by appellants. Instruction 4 fully covers the question whether plaintiff knew of the mortgage and assented to its execution.

If, as contended, there is a conflict in the instructions given, it was error invited by appellant and no ground for reversal. 88 Ark. 499; 89 Ark. 154; 102 Ark. 213; 106 Ark. 138; 107 Ark. 130.

WOOD, J., (after stating the facts). The court erred in its instructions. In instructions given at the request of the appellee the court, in effect, told the jury broadly that if the appellee contracted to sell the machinery in question to Protho & Holiman and at the time reserved title in himself until the purchase money was paid, and that if they found from the evidence that the purchase money had not been paid, their verdict should be for the appellee. These instructions entirely ignored the issue as to whether or not the appellee, after entering into the

contract with Protho & Holiman, thereafter ratified the acts of his vendees in executing the mortgage on the machinery under which appellant, W. H. Greer, holds.

True, the court granted prayer No. 4 of appellant, in which this issue was submitted, but this prayer is necessarily in conflict with the instructions granted at the instance of the appellee. While there were no specific objections to the instructions granted at the request of the appellee, instruction No. 4, given at appellants' instance, was tantamount to a specific objection to appellee's prayers so far as the issue of ratification was concerned, and also prayer No. 6 of appellants, which the court refused. Prayer No. 6 should have been given. The same idea was not covered fully in instruction No. 4, given at the request of appellants.

There was testimony to warrant the court in sending to the jury the issue as to whether or not appellee had ratified the conduct of his vendees in executing the mortgage under which appellant Greer claims the right to possession of the property, and the issue as to whether or not appellee had received the benefit of the money derived from the mortgage, knowing at the time that the property had been mortgaged, and thereby estopped himself from setting up title adverse to one who holds under such mortgage.

In *Bell* v. *Old,* 88 Ark. 105, we held that a vendor of chattels waives a reservation of title where he consents to the execution of a mortgage by the vendee, at least as to the mortgagee and those claiming under him.

The above principle is applicable here and the court should have submitted this issue, along with the other issues, in instructions that were not in conflict, and therefore calculated to mislead the jury.

For the errors indicated the judgment is reversed and the cause is remanded for a new trial.