Craig McDONALD, Appellant (Plaintiff),

v.

MOBIL COAL PRODUCING, INC.; Brad Hanson; Peter Totin; and Bert Gustafson, Appellees (Defendants).

No. 89-146.

Supreme Court of Wyoming.

April 6, 1990.

4. W.S. 26-1-101 through 26-33-111 (June 1983 Repl.).

Mary Elizabeth Galvan and Kennard F. Nelson of Kirkwood, Copenhaver, Nelson & Galvan, Laramie, for appellant.

Francis E. Stevens of Stevens, Edwards & Hallock, Gillette, and Theodore A. Olsen of Sherman & Howard, Denver, Colo., for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

This is an appeal from a summary judgment in favor of Appellees Mobil Coal Producing, Inc., Brad Hanson, Peter Totin, and Bert Gustafson, denying the claim of Appellant Craig McDonald for wrongful discharge from employment.

We reverse and remand.

McDonald states the issues as:

I. [Whether t]he trial court erred in holding that the Mobil Coal handbook did not constitute an employment contract.

II. [Whether t]he trial court erred in dismissing Craig McDonald's claim under the covenant of good faith and fair dealing.

McDonald worked at Mobil's Caballo Rojo coal mine in Campbell County, Wyoming, from August 1987 until June 1988 as a technician in the preparation plant. Hanson was the mine superintendent, Totin was the mine supervisor of employee relations, and Gustafson was the preparation plant supervisor. McDonald contends that he resigned his position at the mine following rumors that he had sexually harassed a female co-employee. McDonald also contends the resignation resulted from a meeting with Hanson, Totin, and Gustafson where McDonald was told he had the choice of either resigning or being fired.

When McDonald applied for the position at Caballo Rojo, he signed a statement on his employment application which said in part:

I agree that any offer of employment, and acceptance thereof, does not consti-

tute a binding contract of any length, and that such employment is terminable at the will of either party, subject to applicable state and/or federal laws.

After he started working at the mine, McDonald received an employee handbook. The stated intention of the handbook, as addressed to Mobil employees, was "to help you understand and explain to you Mobil's policies and procedures." Despite that representation, the handbook stated that it was not a company "comprehensive policies and procedures manual, nor an employment contract."

The handbook stated that Mobil was "committed to maintaining an environment of mutual trust, understanding, and cooperation" and that Mobil encouraged communication between employees and supervisors on an informal basis. It informed the reader of the existence of "a Fair Treatment Procedure that afford[ed] an employee the opportunity to be heard, without fear of reprisal." This "Fair Treatment Procedure" was a detailed four-step procedure in which an employee discussed a problem with a supervisor. If the employee was not satisfied with the outcome of this discussion, the employee could take the matter to other supervisory personnel.

The handbook also detailed a disciplinary procedure. It included a noninclusive list of behaviors which Mobil would not condone and a five-step disciplinary process. These steps were: (1) counseling; (2) written reprimand; (3) final written reprimand; (4) three-day suspension; and (5) discharge. The handbook stated that Mobil believed "union representation [was] unnecessary for employees to enjoy job security, career opportunities, consistent treatment, and competitive wages and benefits." The handbook listed seven "fundamental obli-

gations" for Mobil to fulfill. Among these seven were:

2. To train and guide employees, allow them to develop their job abilities and regularly keep them informed of their progress.

3. To invite constructive suggestions and criticism and guarantee the right to be heard without fear of reprisal.

4. To give helpful consideration when an employee makes a mistake or has a personal problem with which we are asked to help.

After resigning, McDonald filed suit, claiming breach of contract, breach of the covenant of good faith and fair dealing, negligence, and defamation.[1] Mobil and Totin moved to dismiss the suit on the bases of W.R.C.P. 12(b)(1) (lack of jurisdiction over the subject matter)[2] and W.R.C.P. 12(b)(6) (failure to state a claim upon which relief can be granted). Hanson and Gustafson moved to dismiss on the basis of W.R.C.P. 12(b)(5) (insufficiency of service of process).

Because supplemental documents were filed with the motions, the trial court treated the motions as motions for summary judgment. W.R.C.P. 56. *See, e.g., Mostert v. CBL & Associates*, 741 P.2d 1090 (Wyo. 1987). The court noted that the "tenor" of the handbook could cause it to appear to be a contract. However, the court held that the disclaimer in the handbook defeated any claim that the handbook was part of an employment contract. Thus, despite the "tenor" of the handbook, the court held that McDonald was an at-will employee and that his termination did not violate any concept of good faith and fair dealing. The court also held that the negligence and defamation claims failed to state a cause of

---

**1.** The dismissals of the negligence and defamation claims are not the subject of this appeal. The negligence claim resulted from the contention that Mobil had a duty to train Hanson, Totin, and Gustafson in the proper manner to carry out the terms of the employee handbook. The defamation claim resulted from the contentions that the record kept by Mobil of McDonald's resignation places McDonald in a false light and that McDonald is required to

relate alleged false grounds for his resignation whenever he applies for employment.

**2.** Mobil and Totin contended that McDonald's defamation and negligence claims were barred by the exclusivity provision of the Wyoming Worker's Compensation Act. *See* Wyo.Stat. § 27-14-104 (1977) (amended effective July 1, 1989). Because the dismissals were founded on other grounds, the trial court never reached this issue.

action recognized in Wyoming. It granted summary judgment in favor of Appellees.

 Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Baros v. Wells*, 780 P.2d 341 (Wyo.1989); *Farr v. Link*, 746 P.2d 431 (Wyo.1987). We review a summary judgment in the same light as the district court does, using the same materials and following the same standards. *Baros*, 780 P.2d 341; *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Baros*, 780 P.2d 341; *Doud v. First Interstate Bank of Gillette*, 769 P.2d 927 (Wyo.1989). A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174 (Wyo.1988); *Johnston v. Conoco, Inc.*, 758 P.2d 566 (Wyo.1988).

 Disposition of this case requires us to review the revision of the employee handbook discussed in *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702 (Wyo.1985). We held in *Parks* that the provisions in the handbook constituted part of the Mobil employee contract and that the existence of the handbook elevated the nature of the Mobil employees' status beyond simple at-will employment. *Id.* at 706–07. In an at-will employment situation, either party may terminate the relationship for any reason at any time without incurring liability and without violating any implied covenant of good faith and fair dealing. *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73 (Wyo.1989); *Griess v. Consolidated Freightways Corporation of Delaware*, 776 P.2d 752 (Wyo.1989); *Parks*, 704 P.2d at 704.

Following *Parks*, Mobil revised its handbook. The most significant revision was the addition of a statement that the handbook was not an employment contract. A contract exists when there is a meeting of the minds. *Anderson Excavating and Wrecking Company v. Certified Welding Corporation*, 769 P.2d 887 (Wyo.1988). Mobil's express disclaimer demonstrates that it had no intention to form a contract. We cannot say that the handbook was part of the employment contract; however, this determination does not end our analysis. We have recognized limited exceptions to the at-will relationship. *Nelson*, 777 P.2d at 75. *See, e.g., Leithead v. American Colloid Company*, 721 P.2d 1059 (Wyo. 1986); *Alexander v. Phillips Oil Company*, 707 P.2d 1385 (Wyo.1985), *after remand* 741 P.2d 117 (Wyo.1987) (employee handbook without disclaimer is part of the employment contract); *Griess*, 776 P.2d 752 (employer cannot terminate at-will employee for seeking benefits under worker's compensation statutes); and *Parks*, 704 P.2d 702. Other provisions of the handbook require us to recognize another manner in which an employer can modify the at-will employment relationship.

As the trial court noted, if it were not for the disclaimer, the "tenor" of the handbook could cause it to be viewed as a contract, and McDonald may have believed that the handbook was a contract. Our reading of the portions of the handbook included in the record reveals language which could be understood to connote promises notwithstanding a lack of a contractual obligation. Even without a contractual obligation, some promises remain enforceable.[3] This Court has adopted Restatement (Second) of Contracts § 90(1) (1981), which states:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such

---

**3.** This is not the first case where this Court has noted that an employer could be held to its representations outside of a contractual context. In *Bauer v. State ex rel. Wyoming Worker's Compensation Division*, 695 P.2d 1048 (Wyo.1985), we held that an employer could not assert the statute of limitations as a defense to a worker's compensation claim when its agent had told the employee that she was not covered under worker's compensation and the employee relied upon that representation.

action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. *Hanna State & Savings Bank v. Matson,* 53 Wyo. 1, 77 P.2d 621 (1938). *See also Tremblay v. Reid,* 700 P.2d 391, 395 n. 1 (Wyo.1985). The Restatement (Second) of Contracts, *supra,* § 2(1) at 8, defines a promise as

a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made.

■ Despite the disclaimer of contract, the handbook did indicate its purpose was to explain the company's policies and procedures to Mobil's employees.

Having announced the policy, presumably with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force, the employer may not treat its promise as illusory.

*Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880, 895 (1980), *quoted in Damrow v. Thumb Cooperative Terminal, Inc.,* 126 Mich.App. 354, 337 N.W.2d 338, 342 (1983). Thus, an employee is entitled to enforce a representation in an employee handbook if he can demonstrate that: (1) The employer should have reasonably expected the employee to consider the representation as a commitment from the employer; (2) the employee reasonably relied upon the representation to his detriment; and (3) injustice can be avoided only by enforcement of representation. *Cronk v. Intermountain Rural Electric Association,* 765 P.2d 619, 624 (Colo.App.), *cert. denied* (1988). These are issues for the trier of fact to determine. *Id.* Unless the employee can make this factual showing to overcome the presumption of an employment terminable at the will of either party, the employee's cause of action will fail. *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987).

■ Genuine issues of fact exist here. McDonald must prove that his resignation was forced and not volitional. Should Mc-

Donald meet this burden, the finder of fact must determine what effect, if any, the representations made by Mobil in its handbook had upon an otherwise at-will employment relationship. McDonald's affidavit in opposition to the motions for dismissal purported that he relied upon the procedures outlined in the handbook. Issues of whether Mobil should have expected McDonald's reliance upon these procedures, whether McDonald's reliance was reasonable, and whether the Mobil termination procedures should be enforced to avoid injustice will need to be addressed if McDonald proves his resignation was forced. The trial court improperly granted summary judgment to Appellees.

Reversed and remanded for further proceedings consistent with this opinion.

GOLDEN, Justice, specially concurring.

I concur only in the result, disagreeing with the application of the principles of promissory estoppel under the facts of consequence in this case.

The trial court found that the disclaimer (stating that the handbook was not a "comprehensive policies and procedural manual, nor an employment contract") was conspicuous because it was located on the handbook's first page. I disagree. The fact that the disclaimer appears on the front page does not by itself make it conspicuous. I would rule, as a matter of law, that a disclaimer's location is not the sole determinant of whether or not it is conspicuous. In this instance, the disclaimer consisted of one sentence—no different in appearance from any of the other sentences contained on the page. It is not even labeled as a disclaimer.

The United States Court for the District of Wyoming, in a case applying Wyoming law, addressed the issue whether a disclaimer in an employee handbook negates the employee's claim that the handbook constituted an employment contract. *Jimenez v. Colorado Interstate Gas Company,* 690 F.Supp. 977 (D.Wyo.1988) (Johnson, J.). The Court ruled that disclaimers are effective only if they are conspicuous, which is a question of law. *Id.* at 980. In

*Jimenez,* the employer claimed that it was not bound to follow the handbook because it contained a disclaimer stating that the handbook was not an employment contract. The District Court ruled, however, that the disclaimer was "not set off in any way that would attract attention" and, therefore, was ineffective against the employee. *Id.* at 980. The Court listed the disclaimer's inadequacies: "Nothing is capitalized that would give notice of a disclaimer. The type size equals that of other provisions on the same page. No border sets the disclaimer apart from any other paragraph on the page." *Id.* 980. After review of Mobil's employee handbook, I find that its attempted disclaimer suffers from the same deficiencies found in *Jimenez.*

Employment agreements are typically unilateral offers to persons untutored in contract law. If an employer seeks to off-set the contractual tenor of its handbook with a disclaimer, equitable and social policy concerns demand that the disclaimer be presented clearly so that employees are not misled by the handbook. A recent Idaho case involved a disclaimer located on the cover page (the disclaimer was, apparently, the cover page's sole occupant). *Arnold v. Diet Center, Inc.,* 113 Idaho 581, 746 P.2d 1040, 1041 (1987). The personnel manager read the disclaimer to the employee. The employee was then told the disclaimer meant that the handbook was not a contract. Finally, the manager had the employee sign the cover page, below the disclaimer. This court should hold that something similar to what the Idaho employee was afforded is required before a disclaimer is found to be conspicuous.

In addition, I am concerned that the plurality opinion leaves the issue of the disclaimer's effect unresolved. The trial court granted Mobil summary judgment because it found that, as a matter of law, the handbook's disclaimer was conspicuous. The plurality reasons that summary judgment was inappropriate because promissory estoppel raises issues of material fact. On remand, however, the trial court may still rule, as a matter of law, that the disclaimer is sufficiently conspicuous to constitute a defense. For the reasons set forth above, I find this result unacceptable.

Because the disclaimer is ineffective as a matter of law, and its effect now becomes a question of fact, Mobil's attempted disclaimer has rendered the employee handbook ambiguous. The handbook provides that "union representation is unnecessary for * * * job security and * * * consistent treatment, * * *." It also contains a detailed disciplinary procedure. In *Jimenez,* at 980, the Court observed that "[u]nder Wyoming decisions, handbooks that list misconduct that could result in discharge imply that cause is required." (citing *Leithead v. American Colloid Company,* 721 P.2d 1059, 1063 (Wyo.1986); and *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 705 (Wyo.1985)). When these provisions are juxtaposed against the attempted disclaimer, ambiguities exist as to the parties' intent vis-a-vis the terms of employment.

This court outlined the procedure for resolving ambiguous employee handbooks, stating:

> Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact. * * * If the meaning of a contract is ambiguous or not apparent, it may be necessary to determine the intention of the parties from evidence other than the contract itself, and interpretation becomes a question of law and fact.

*Parks,* 704 P.2d at 706 (citation omitted).

The handbook's ambiguous provisions create issues of material fact and, therefore, summary judgment is improper.

CARDINE, Chief Justice, dissenting.

I dissent.

Mobil did all it could by its disclaimer to assure there was not a contract of employment. Parties are free to contract or not as they choose. Mobil chose not to contract with its employee, and, like it or not, we should accept that decision.

THOMAS, Justice, dissenting.

I agree with the dissenting opinion of Chief Justice Cardine. If I count the votes correctly, it would seem that three justices do not agree on the majority disposition invoking promissory estoppel; four justices agree that there was no employment contract; and three justices agree that the summary judgment should be reversed and the case remanded for trial. There are not many moments of comfort in the life of a judge, but I find one of those in the fact that I do not have to develop the jury instructions in this case.

In prior cases, this court has critiqued employee handbooks in the context of their effect in structuring an employment contract as distinguished from an employment at will. *Leithead v. American Colloid Company*, 721 P.2d 1059 (Wyo.1986); *Alexander v. Phillips Oil Company*, 707 P.2d 1385 (Wyo.1985); and *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702 (Wyo. 1985). In this instance, Mobil Coal Producing, Inc. obtained a signed statement from McDonald that his employment was terminable at the will of either party. The handbook contained an express disclaimer of its status as an employment contract. As Chief Justice Cardine notes in his dissent, "Mobil did all it could by its disclaimer to assure there was not a contract of employment." Indeed, what more could it have done.

Now, having done its best to have its conduct comport with the prior decisions of this court, Mobil finds that, in any event, anything it may say in the employee handbook can become a binding promise under the doctrine of promissory estoppel. I apologize to my readers for being obtuse, but I cannot distinguish that from the effect of a contract, although the majority concludes that there is no contract. I fear that corporate America, as it lives in the state of Wyoming, will be forced to conclude that the court is toying with it in some cruel and peculiar game of cat and mouse. In my judgment, we offered guidance in the earlier employee at will cases and, now, when confronted with an employer who followed that advice, we should not say that we really did not mean to adhere to our earlier guidance.

I would affirm the summary judgment in this case.