Elizabeth A. BOUWENS, Appellant (Plaintiff),

v.

CENTRILIFT, A Baker Hughes Company, Appellee (Defendant).

No. 97–346.

Supreme Court of Wyoming.

March 4, 1999.

---

Richard R. Wilking, Casper, Wyoming, Representing Appellant.

Stephenson D. Emery and Patrick J. Murphy of Williams, Porter, Day & Neville, Casper, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

GOLDEN, Justice.

Betty Bouwens, who was orally hired for no definite duration of employment as a field secretary by Centrilift, which specializes in the design, manufacture, and servicing of electric submersible pumps used in the oil industry, was laid off from that employment after more than eight years of service because of Centrilift's legitimate economic problems. Pointing to a layoff provision in Centrilift's employee handbook, which she received and read approximately three years after she was hired, Bouwens asserted that Centrilift broke its promise to her in that layoff provision that it would "give particular attention" to her seniority when making its selection of employees to be laid off. She filed suit against Centrilift for wrongful termination, asserting claims of breach of implied contract and promissory estoppel, both based upon the handbook's layoff provision. Centrilift moved for summary judgment, pointing to an alleged disclaimer provision in the same handbook which states that the handbook contains some guidelines of practices and policies and nothing in the handbook is intended to be understood as an employment contract between Centrilift and the employee. The district court granted Centrilift's motion, holding that the disclaimer provision was conspicuous and clear and, therefore, legally sufficient to negate the alleged contractual status of the layoff provision and that the promissory estoppel claim also failed. On appeal, Bouwens challenges those rulings. We affirm.

## ISSUES

Bouwens presents these issues for our review:

A. Under Wyoming's objective theory of contract formation, is an employee handbook disclaimer ambiguous if it provides only that: "This handbook contains some *guidelines* of practices and policies of Centrilift" and that "NOTHING IN THIS HANDBOOK IS INTENDED TO BE UNDERSTOOD AS AN EMPLOYMENT CONTRACT BETWEEN THE COMPANY AND THE EMPLOYEE."

B. Did the district court err in ruling that there were no genuine issues as to material fact concerning appellant's promissory estoppel claim?

Centrilift states that the issues are:

1. Where Appellant's employment was terminated as part of a company-wide reduction in force for economic reasons, and where she admitted that she had read the disclaimer in the employee handbook, did the district court err in finding that the disclaimer language was unambiguous, and

---

* Chief Justice at time of expedited conference; retired November 2, 1998.

thereby precluded her cause of action for breach of implied in fact contract?

2. Did the district court err as a matter of law in finding that, under the circumstances, appellant had no actionable claim for promissory estoppel?

### FACTS

We state the facts in the light most favorable to Bouwens. When she was orally hired by Centrilift in February, 1986, there was no written employment contract and there was no written or oral promise of employment for a definite duration. About three years later, Centrilift distributed to its employees, including Bouwens, an employee handbook. Bouwens read it. In April, 1994, her supervisor told her that she was laid off. Others were also laid off. Centrilift's economic problems necessitated the layoffs. Management considered employee qualifications in selecting those employees to be laid off, but, stating the facts in the light most favorable to Bouwens, Centrilift did not give any attention to Bouwens' length of service, contrary to the layoff provision in Section B of the employee handbook.

The handbook contains a couple of provisions governing layoffs. In Section E, entitled "Job Procedures and Definitions," there is a provision at E–3 entitled "Plant Employee Workforce Reduction and Recall," which reads:

> Should business be such that no other course of action is possible, the following lay-off and recall procedure will be used: Allow employees to voluntarily accept a lay-off, subject to management approval. If an inadequate number of persons accept voluntary lay-off, management is responsible for determining the remaining people who need to be laid off.

In Section B, entitled "Things You Want to Know About Your Job," there is a provision at B–3 entitled "Continuous Service," which reads in pertinent part:

> In its determination as to assignments, transfers, promotions, layoffs, shift preference, and recalls, the Company, in considering all employees, will give particular attention to the length of service with the Company, as well as qualifications and physical ability.

In Section A, entitled "Introduction," there is a provision at A–2 entitled "About the Handbook," which reads in its entirety:

> As a new employee, you'll want to know what to expect from the Company, and what the Company expects from you. This handbook contains some *guidelines* of practices and polices of Centrilift which are important to each of us. This booklet has been designed to lend you a helping hand in your daily working relationships.

> You will want to become familiar with the rules and policies included in this handbook. If questions come to mind that are not specifically mentioned in this handbook, see your supervisor. He, or she is able and eager to help you. If unable to give you an immediate answer to your particular question, your supervisor will get the answer for you.

> It will be very helpful if you read this booklet very carefully and keep it for future reference. If you lose your copy, contact your supervisor for another.

> NOTHING IN THIS HANDBOOK IS INTENDED TO BE UNDERSTOOD AS AN EMPLOYMENT CONTRACT BETWEEN THE COMPANY AND THE EMPLOYEE.

Bouwens concedes that this provision is conspicuous. She asserts, however, that it is not clear.

The handbook also contains provisions relating to a progressive discipline procedure, a commitment to fair play in the workplace environment in the context of following the necessary rules of business, an illustrative but not inclusive listing of personal behavior actions which could be cause for termination, good attendance, absenteeism and job security, and Centrilift's "Basic Concept" of mutual trust and security. Apart from the handbook, according to Bouwens, Centrilift's course of dealing was to hire new employees on a temporary basis; if they worked out, they became "permanent" employees who could only be fired for good cause.

## DISCUSSION

We review this summary judgment appeal under W.R.C.P. 56, in accordance with our well-established standard of review. We need not unnecessarily extend the length of this opinion by reciting that standard. *See, e.g., Deering v. Bd. of Directors of County Library of Fremont County,* 954 P.2d 1359, 1363 (Wyo.1998).

### Modification of "at will" employment/disclaimer

Bouwens asserts that Centrilift, by distribution of its employee handbook which contains a number of provisions relating to job security, discipline and personal behavior actions which could be cause for termination, procedures for handling disciplinary matters and layoff selection, and by its course of dealing with "permanent" employees, modified Bouwens' presumed "at-will" employment status to a status with respect to which Centrilift promised to use specific criteria identified in a layoff provision of the handbook when selecting employees to be laid off because of economic problems. More pertinently, Bouwens asserts that the concededly conspicuous disclaimer language in the employee handbook is not clear and, therefore, legally insufficient to negate the contractual status of the layoff provision because that disclaimer language does not satisfy the clarity requirements this Court discussed in *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986 (Wyo.1991); *Sanchez v. Life Care Centers of America, Inc.,* 855 P.2d 1256 (Wyo.1993); *Lincoln v. Wackenhut Corp.,* 867 P.2d 701 (Wyo.1994); *Loghry v. Unicover Corp.,* 878 P.2d 510 (Wyo.1994) (*Loghry I* ); and *Davis v. Wyoming Medical Center, Inc.,* 934 P.2d 1246 (Wyo.1997). Bouwens also refers this Court to *McIlravy v. Kerr–McGee Corp.,* 74 F.3d 1017 (10th Cir.1996) (which applied Wyoming law); *Nicosia v. Wakefern Food Corp.,* 136 N.J. 401, 643 A.2d 554 (1994); and *Kern v. Levolor Lorentzen, Inc.,* 899 F.2d 772 (9th Cir.1990), as persuasive authority on the subject of the clarity requirements of disclaimer language.

Centrilift contends that Bouwens' reliance on handbook and course-of-dealing modifications of the presumed "at-will" employment relationship is misplaced to the extent that such modifications relate to establishing Bouwens' status as an employee whom Centrilift can terminate only for good cause. Relying on *Rompf v. John Q. Hammons Hotels, Inc.,* 685 P.2d 25 (Wyo.1984), which addressed a layoff termination as opposed to a disciplinary "cause" termination, Centrilift notes that this Court held there that a handbook's disciplinary provisions have no application to a layoff termination in response to an employer's economic problems. *Id.* at 29. In other words, Centrilift contends that an employer may rightfully lay off even a "for cause" status employee for legitimate economic reasons without violating discipline-related policies or procedures created by the employee handbook provisions and the employer's course of dealing with its employees. Consequently, Centrilift's position is, for purposes of resolving the precise issue before this Court, the legal sufficiency of the disclaimer language as it relates to the layoff provision, it is irrelevant whether Bouwens was a "for cause" status employee.

With respect to the legal sufficiency of the disclaimer language, Centrilift maintains that the language is clear because it tells an employee what she needs to know: Centrilift has no intention to form an employment contract with the handbook provisions as its terms. Centrilift observes that this Court, in its several disclaimer cases, has eschewed establishing what specific language a disclaimer must contain to be effective. *Sanchez,* 855 P.2d at 1259. Consequently, Centrilift rejects Bouwens' view that disclaimer language must be a mirror-image of that language which passed muster in *Lincoln, Loghry,* and *Davis.*

■ We believe that Centrilift's reference to that said in *Rompf* is well-taken: an employer's course-of-dealing and handbook provisions which relate to disciplinary actions and procedures are irrelevant to an analysis of a layoff termination. *Rompf,* 685 P.2d at 29. However, as Bouwens correctly observes, the employee handbook in *Rompf,* unlike the Centrilift handbook in question, did not contain a layoff provision. Because Centrilift's handbook contains a layoff provision, this Court must consider it relevant for

purposes of the analysis of the precise question of the legal sufficiency of the handbook's disclaimer language. Centrilift does not contend otherwise.

Moving to that precise question, this Court shall first succinctly review its past decisions in this troubling area of employment law. *McDonald v. Mobil Coal Producing, Inc.,* 789 P.2d 866 (Wyo.1990) (*McDonald I* ), and *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986 (Wyo.1991) (*McDonald II* ), which was the rehearing, involved the employee's claim that he had been wrongfully discharged for alleged misconduct without the employer having followed the disciplinary process contained in the employee's handbook. In the alternative, the employee relied upon the promissory estoppel doctrine. The trial court granted summary judgment for the employer on the strength of a disclaimer statement in the handbook that the handbook was a guide and not an employment contract. *McDonald I,* 789 P.2d at 868. On appeal, four members of this Court agreed with the trial court that the "express disclaimer demonstrates that [the employer] had no intention to form a contract." *Id.* at 869, 871–72. One member of this Court thought the disclaimer was ineffective because it was inconspicuous. *Id.* at 870–71. About the promissory estoppel issue, two members of this Court saw the presence of genuine issues of material fact relating to the estoppel elements, *id.* at 870; three members of the Court, however, rejected the application of the promissory estoppel doctrine. *Id.* at 871–72.

On rehearing in *McDonald II,* this Court was again badly divided. Two members of this Court thought the disclaimer statement was insufficiently conspicuous to be binding on an employee and that genuine issues of material fact existed relating to the parties' intentions to form a contract, requiring the fact finder to consider the various handbook provisions and the employer's course of dealing with the employee. *McDonald II,* 820 P.2d at 990–91. One member of this Court remained steadfast on the application of the promissory estoppel doctrine. *Id.* at 991–92. The remaining two members of the Court held firm in their views that the disclaimer statement effectively prevented the formation of a contract requiring good cause for disciplinary termination and that promissory estoppel did not apply. *Id.* at 992–93.

From this brief review of the *McDonald* decisions, it is readily seen that they enjoy no precedential value. Any reliance on them is misplaced.

Of the several disclaimer cases decided after the *McDonald* cases, *Sanchez, Lincoln,* and *Loghry I* involved terminations in which the terminated employee claimed that a handbook contained disciplinary provisions which created a "for cause" status which fettered the employer's termination decision. In *Sanchez,* although the facts of record were sparse, the employee told her employer that because she was fatigued she would not be at work; the employer told her "to forget coming in" and removed her from the work schedule, effectively terminating her employment. Countering the employee's reliance on the handbook's illustrative list of misconduct and related disciplinary provisions, the employer relied on a handbook disclaimer provision which stated, among other things, the guidelines in the handbook were for the mutual benefit of the employer and employees; management reserved the right to change or cancel all personnel policies with or without notice, and to terminate employees and select the manner, method and means of doing so; and the handbook was not a contract and contained no promises upon which any employee could reasonably maintain any expectation of a contract. *Sanchez,* 855 P.2d at 1257. Notably missing from the disclaimer language, as stated by the Court, was a statement that the employer retained the power to fire an employee with or without good cause. *Id.* at 1259. Because this was a straightforward termination case involving the basic question of whether or not the employer could terminate with or without cause, the court determined that the disclaimer language "does not tell the employee what he needs to know." *Id.* Disclaimer language that an employee could be terminated without cause would have negated the contrary implication of the handbook's misconduct and disciplinary provisions. *Id.* We reversed the summary judgment in the

employer's favor and remanded for trial. *Id.* at 1259–60.

In *Lincoln,* this Court affirmed the summary judgment for the employer because the disclaimer was clear. *Lincoln,* 867 P.2d at 704–05. The employee claimed she had been terminated without a specific charge of misconduct and her employer failed to follow the discipline procedure contained in its handbook. *Id.* at 702. The employer asserted that the handbook's disclaimer provision preserved employment at will. *Id.* This Court held that the disclaimer language was clear because it told the employee, among other things, that no contract was being formed, no binding terms or conditions of employment were being stated, and the employer could terminate employment at any time with or without good cause. *Id.* at 705.

In *Loghry I,* this Court affirmed a partial summary judgment for the employer because the disclaimer language in both the handbook and the acknowledgment page signed by the employee was clear. *Loghry I,* 878 P.2d at 513. The employee claimed that her employer terminated her for reporting a possible breach of security which the handbook required her to do. *Id.* at 512. She charged that her employer failed to follow its normal disciplinary process also required by the handbook. *Id.* This Court held that the disclaimer language was clear because, among other information, it told the employee her employment could be terminated with or without cause at any time without warning; the handbook language was not intended to create and was not to be construed to constitute a contract between the employer and employees; there were no promises for continued employment; and only the employer's board of directors was authorized to waive these conditions of employment. *Id.* at 513.

In *Davis,* in which this Court affirmed summary judgment for the employer, the terminated employee did not challenge the clarity of the disclaimers on her job application form and in the employee handbook; she conceded their effectiveness. *Davis,* 934 P.2d at 1249. She claimed, rather, that her employer's course of dealing with her after she began working negated the effect of the disclaimers and created a genuine issue of fact relating to the necessity of good cause for discharge. *Id.* This Court rejected her claim, holding that the disclaimer language, investing only the human resources vice-president with authority to change the employment relationship, validly disclaimed her supervisor's job performance evaluations and favorable comments as a basis for changing her employment status. *Id.* at 1249–50, 1252.

■ Against the backdrop of this Court's disclaimer decisions, this Court must address Bouwens' claim that Centrilift's disclaimer language falls short of the mark established in those past decisions. In this exercise, it is helpful to use a contract formation analysis. "[A]n offer, acceptance, and consideration are the basic elements of a contract." *Miller v. Miller,* 664 P.2d 39, 40 (Wyo.1983). More than twenty years ago, this Court replaced the well-known old contract expression "meeting of the minds" with the more accurate expression "mutual assent" as the legal standard for the formation of a binding contract. *Shrum v. Zeltwanger,* 559 P.2d 1384, 1387 (Wyo.1977). This Court said, "In order for there to be a binding contract, there must be mutual assent—a mutual manifestation to the same terms. Calamari & Perillo, Law of Contracts, HB, §§ 11 and 12, pp. 13–14." *Id.; accord, Raymond v. Steen,* 882 P.2d 852, 856 (Wyo.1994). "[A]ssent ... is implicit in the principal that contractual liability is consensual." 1 E. Allan Farnsworth, *Farnsworth on Contracts,* § 3.1, at 160 (1990). "[C]ourts have required that assent to the formation of a contract be manifested in some way, by words or other conduct, if it is to be effective." *Id.* at 160–61. Professor Farnsworth explains the analysis of the outward appearance of the agreement process in this way:

> [I]t is common to analyze the process in terms of two distinct steps: first, a manifestation of assent that is called an *offer,* made by one party (called the *offeror*) to another (called the *offeree*); and second, a manifestation of assent that is called an *acceptance,* made by the offeree to the offeror.

*Id.* § 3.3, at 163 (footnotes omitted). Our concern in this case is the first step, that of

the offer. An offer "can be defined as a manifestation of assent to enter into a bargain made by the offeror to the offeree...." *Id.* Concretely, our concern in this case is whether Centrilift's handbook layoff provision amounted to an offer, *i.e.,* a manifestation of assent to enter into a bargain. Under the objective theory of assent, which courts, including this one, generally accept today, one looks "to the external or objective appearance of the parties' intentions as manifested by their actions." *Id.* § 3.6, at 168. This Court has stated it in this way, "A party's intention will be held to be what a reasonable man in the position of the other party would conclude his manifestations to mean." *Shrum,* 559 P.2d at 1387. This Court agrees with Professor Farnsworth who has said, "The easiest way for a party to make clear an intention not to be legally bound is to say so." Farnsworth, *supra,* § 3.7, at 173. In saying "NOTHING IN THIS HANDBOOK IS INTENDED TO BE UNDERSTOOD AS AN EMPLOYMENT CONTRACT BETWEEN THE COMPANY AND THE EMPLOYEE," did Centrilift make clear an intention not to be legally bound? We hold that it did. We hold that a reasonable employee reading that language could form but one conclusion about Centrilift's intention relating to the handbook provisions: none of those provisions was an enforceable term of an employment contract. Consequently, we hold that the layoff provision did not have contractual status.

To be sure, of the many disclaimer decisions in other jurisdictions, some would support the decision here, and some would not. *See, e.g., Castiglione v. Johns Hopkins Hosp.,* 69 Md.App. 325, 517 A.2d 786, 792–93 (1986) (disclaimer that handbook "does not constitute an express or implied contract" is clear); and cases cited in Michael A. Chagares, *Utilization of the Disclaimer As An Effective Means to Define the Employment Relationship,* 17 Hofstra L.Rev. 365, 382 n. 132 (1989); *Nicosia v. Wakefern Food Corp.,* 136 N.J. 401, 643 A.2d 554, 560–61 (1994) (disclaimer that "[t]he terms and procedures contained therein are not contractual" is unclear). To the extent today's analysis of the clarity requirements of disclaimer language represents a shift away from the approach used before, we firmly believe today's contract formation analysis is the better-reasoned one.

### Promissory Estoppel/Disclaimer

In the event this Court held that the disclaimer language negated the formation of a contract, Bouwens has presented the alternative argument that the doctrine of promissory estoppel applies to the facts of this case. The elements of that doctrine are captured in Restatement (Second) of Contracts § 90(1) (1981), which states:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*See Loghry v. Unicover Corp.,* 927 P.2d 706, 710 (Wyo.1996) (*Loghry II* ); *Hanna State & Savings Bank v. Matson,* 53 Wyo. 1, 16, 77 P.2d 621, 625 (1938).

Bouwens contends that the handbook layoff provision qualifies as a clear and definite promise made by Centrilift. Centrilift counters that the disclaimer language also prevents the layoff provision from attaining "promise" status. In *Loghry II,* this Court decided that when an at-will employee presents a promissory estoppel claim, it will give effect to any valid disclaimers, instead of deciding under its equitable powers. *Loghry II,* 927 P.2d at 711. In *Davis,* this Court said, "A valid disclaimer is fair notice to employees of what can be expected from the employer." *Davis,* 934 P.2d at 1252. We hold that not only did Centrilift's disclaimer language prevent the layoff provision from being an offer, it also prevented it from being a promise. Consequently, the first necessary element of the promissory estoppel doctrine is missing.

This Court affirms the district court in all respects.