Andrew J. DEERING, Appellant (Plaintiff),

v.

BOARD OF DIRECTORS OF the COUNTY LIBRARY OF FREMONT COUNTY, Wyoming, Appellee (Defendant).

No. 96–218.

Supreme Court of Wyoming.

March 2, 1998.

David B. Hooper, Riverton, for Appellant (Plaintiff).

Norman E. Young (argued), Fremont County and Prosecuting Attorney, and Denise G. Malloy, Deputy Fremont County and Prosecuting Attorney, Riverton, for Appellee (Defendant).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Appellant Andrew J. Deering, a former ten and one-half year Riverton Branch Librarian, contends that the public meeting of the Appellee Board of Directors of the County Library of Fremont County, at which that board decided to eliminate three job positions, including his, under its written reduction in force policy because of a reorganization driven by a lack of funds, was a meeting not in conformity with Wyoming's Public Meetings Act,[1] and, therefore, the board's

---

1. Wyo. Stat. §§ 16-4-401 through 407 (1997).

decision is null and void. Wyo. Stat. § 16–4–403(a) (1997). He also contends that the board's payment to him of thirty days' severance pay in lieu of the thirty days' advance written notice of the decision, as required by the board's policy, frustrated his opportunity to persuade the board to explore options other than the elimination of his job and constituted a breach of his implied employment contract arising from the board's written policy.

The district court granted the board's motion for summary judgment, and Deering appeals. As explained below, we affirm.

## ISSUES

Deering presents these issues:

I. Is the action taken at the special meeting of the board whereby Deering's job was eliminated void because such action was not taken at a meeting held in conformance with Wyoming's Public Meeting Law; W.S. § 16–4–401, et seq. (1977, as amended).

II. Were Deering's contractual rights to employment breached by the Board's action in terminating him without notice, cause, or a hearing?

III. Is the Board's action in eliminating Deering's position without notice to Deering a violation of his civil rights including his right to due process?

The board succinctly states the issue in this way:

1. Was the granting of Appellee's motion of Summary Judgment legally correct?

## FACTS

Because this case is in summary judgment posture, we will state the facts in the light most favorable to Deering, the non-movant. Having carefully read the summary judgment materials submitted by the parties and the statements of facts contained in their briefs, we note that the material facts are undisputed.

Deering had been employed as the Riverton Branch Librarian in the Fremont County Library System since August, 1983. From the time of his hiring until the time of the board's decision to eliminate his job position, the board has operated under several policy manuals. Over the years the board has from time to time unilaterally updated these policies. Deering raises no issues about the effect of these various updates; he states he considered that the board's written policies in effect on the day of the board's decision, March 23, 1994, governed the terms of his employment.

The board's budget depends upon county valuation which, beginning in 1986, began to decline, necessitating yearly budget cuts. The board implemented a number of plans to curtail costs, and by 1994 had completed a study indicating that positions must be eliminated as a cost-saving measure. The board held meetings with library personnel in 1993 and in February 1994 to discuss the expected changes.

At the board's regular meeting on February 23, 1994, according to board members Jean Eichler and Jo Wilbert, the board changed its next regularly scheduled meeting from March 30, 1994, the last Wednesday of the month, to March 23, 1994, because a quorum would not be present on March 30. According to Roberta Olson, the Library Director of the County Library of Fremont County, following the February board meeting she prepared and distributed a memo to all library staff which recited, among other information, that the March board meeting had been changed from March 30 to March 23.

On March 23, 1994, at the board's rescheduled regular meeting, the board decided to implement a reorganization involving a reduction in force because of continued budget cuts, which eliminated the three staff positions of Head of Technical Services in Lander, the Children's Librarian in Riverton, and the Riverton Branch Librarian (Deering's job).

Board member Eichler told Deering of the board's decision. Deering asserts he was also told that he could pursue neither the board's grievance procedure nor its appeal procedure set forth in the termination and discharge section of the board's policies. The board delivered to him the letter notifying him of the board's decision. The board also paid Deering for his regular March pay period, for an additional month's pay, and for

earned and accrued vacation and sick leave time.

Deering filed suit against the board on July 17, 1995, contending that the board's March 23 meeting at which the fateful decision had been made was an improperly noticed special meeting and, therefore, not in conformity with the provisions of Wyoming's Public Meetings Act, and under that law, the decision was null and void. Asserting that a property interest in his employment entitled him to constitutional due process, he claimed that the process due would have been a properly noticed meeting at which the decision could be made. He asserted that because the decision was null and void the board must reinstate him and pay him back pay and damages for due process and civil rights violations. He also asserted that the board breached his implied employment contract by terminating him without cause and failing to give him thirty days' advance notice before eliminating his position as required by the board's policies. In its answer to Deering's complaint, the board denied the material allegations and lodged various affirmative defenses.

Following discovery, the board moved for summary judgment, which Deering opposed. The parties' summary judgment submissions included the pleadings; answers to interrogatories; responses to production and admissions requests; affidavits from two board members, the library director, and Deering; the transcript of Deering's deposition; and various exhibits, including the board's policies. After the hearing on the board's summary judgment motion, the district court granted the motion, ruling that no genuine issue of material fact existed; Deering was an at-will employee with no legitimate expectation of entitlement to continued employment; the board's decision to reorganize and implement a reduction in force was based on economic reasons and Deering's position was eliminated because of economic reorganization; Deering failed to exhaust administrative remedies through grievance and appeal; the board's March 23 meeting at which the decision had been made was a regular meeting in conformity with Wyoming's Public Meetings Act; and the board was entitled to judgment as a matter of law. Deering timely filed this appeal.

Before moving to our legal analysis, we must recite a few more facts relevant to the issues. The record does not expressly tell us whether the board's normal business required regular meetings, i.e., meetings at a set date each and every month on which it would hold a regular meeting to transact its normal business. In this regard, the record does not contain a written board resolution, by-law or rule establishing a regular meeting date. The record does contain, however, Deering's affidavit testimony that "[d]uring at least the last 3 years of my employment by the Board, it always held its regular monthly meeting on the last Wednesday of the month." The board does not challenge that this was the board's custom; therefore, for purposes of this appeal, in the light most favorable to Deering, we take as true that the board's custom was to hold its regular monthly meeting on the last Wednesday of each month.

The board's policies that are relevant to the issues presented are those relating to reduction in force and termination and discharge. In March 1993, the board adopted amendments to the Fremont County Personnel Practice and Policy Manual. In a preface to those amendments the following language appeared:

> In all instances in this manual, the Fremont County Library Board of Directors shall take on all responsibilities designated to the County Commissioners on all policy matters in the Fremont County Library System.

The board's reduction in force policy states:

> 5.3 *REDUCTION IN FORCE:* Employment is, of course, dependent upon the County's ability to finance services in the various areas or departments. The Board of County Commissioners has the right to discontinue any area other than the offices provided by law. These employees will be eligible for the COBRA Benefit. No employee in an office whose head is an Elected Official shall have an expectancy of continued employment or a property right to continued employment beyond the term of the Elected Official in whose office or department he/she is employed.

If it shall become necessary to institute a reduction in force of County employees due to lack of funds, lack of work, or reorganization, the [Library Board of Directors] shall render the final decision as to the reduction in force on the recommendation of the Elected Officials and Department Heads.

In deciding which employees shall be affected by the reduction in force, the following order shall be utilized:

1. Temporary employees shall be the first employees to be affected.

2. Probationary employees in the affected class or classes shall be dismissed prior to those employees in the class who have completed the established probationary period.

3. In regard to full-time and part-time employees; i.e., those who have completed the designated probationary period, reduction in force shall be administered as deemed necessary and appropriate.

A full-time or part-time employee who is to be affected by the reduction in force shall receive written notice at least 30 days prior to the effective reduction in force date. A reduction in force is not considered to be a termination.

The board's termination and discharge policy states:

## SECTION 14 *TERMINATION AND DISCHARGE*

An employee cannot be discharged because of race, color, religion, sex, national origin, age or disability. All employees of Fremont County are at-will employees with employment terminable at the will of either party. A probationary employee may be terminated at any time. A full-time/part time employee may be terminated after two weeks written notice; such termination can be done with cause at the discretion of the Elected Official or Department Head.

14.1 *REASONS FOR TERMINATION AND DISCHARGE:* Employment by the County may be terminated for any of the following reasons; however, these are not exclusive reasons for termination:

1. Neglect or inefficiency in properly performing his/her duties;

2. Inefficiency, disobedience, misconduct, carelessness or negli-negligence , with the County's monies or property;

3. Theft or willful destruction of County property;

4. Being under the influence of alcohol or drugs while on duty;

5. Endangering the safety of himself, herself or other employees in the performance of activities related to employment;

6. Accepting fees or valuable gifts.

14.2 *GRIEVANCES, COMPLAINTS AND APPEALS:* Copies of all information in the Grievance Procedure must be available to all interested parties. The Employee Grievance Procedure Form is available through the County Commissioners' Office to covered employees.

*Procedure:*

1. All personnel disputes should first be discussed with the employee's immediate Supervisor. If a satisfactory solution is not reached, the employee must submit his written grievance to his immediate Supervisor within 10 working days of the event or circumstances causing the grievance. If the grievance advances to the review level, a copy of the documentation must be furnished to the County Commissioners.

2. *First Level of Review:*

The subject's immediate Supervisor has five working days to render his written decision to the employee.

3. *Second Level of Review:*

If the employee is not satisfied with the decision of the First Level of Review, he has five working days to submit his written complaint to the Second Level of Review— normally the Department Head or, if the Department Head is his immediate Supervisor (as it may be in many cases), then the complaint goes directly to the County Commissioners.

4. *Final Level of Review:*

If the Department head is the Second Level of Review, the employee's complaint, if still not resolved, should be presented to a Grievance Board of three impartial people within five working days. The final decision will be made within five more working days.

5. *Exit Interview:*

May be requested by either the employee or the employer upon separation of service.

## DISCUSSION

This Court reviews a summary judgment in the same light as the district court, using the same materials. *Smith v. Bd. of Comm'rs of Sublette Cty.*, 891 P.2d 88, 91 (Wyo.1995). When no genuine issues of material fact exist, we affirm summary judgment unless the district court committed an error of law. *Loghry v. Unicover*, 927 P.2d 706, 709 (Wyo.1996).

As we understand the syllogism of Deering's legal position, it is that

1. The board's custom was to hold its regular meetings on the last Wednesday of each month;

2. The board's March 23 meeting was not held on the last Wednesday of that month; therefore, it was a special, not a regular, meeting;

3. Under the Wyoming Public Meetings Act, the notice of a special meeting must specify the business to be transacted at the special meeting;

4. The board's notice of its March 23 special meeting did not specify what business the board would transact at that meeting, that is, more particularly, the decision to reorganize and eliminate three positions including Deering's;

5. Because the board's notice of its March 23 meeting failed to specify the business to be transacted at that meeting, the notice was not in accordance with Wyoming's Public Meetings Act;

6. Because the board's notice was not in accordance with Wyoming's Public Meetings Act, the March 23 meeting was not in conformity with that Act;

7. Because the March 23 meeting was not in conformity with Wyoming's Public Meetings Act, the action taken at that nonconforming meeting, namely, the reorganization and job elimination decision, is null and void according to the Wyoming Public Meetings Act.

The validity of Deering's syllogism depends on its second step, namely, whether the March 23 meeting was a special, not a regular, meeting as Deering contends.

Deering's counsel acknowledged as much when he stated during the district court's summary judgment hearing, "[n]ow, as I started trying to respond to [the board's] arguments, it became more and more apparent to me that the real key to this thing is whether or not this was a special meeting or a regular meeting." Deering reasons that because the March 23 meeting date was not the regularly scheduled meeting date, the March 23 meeting must have been a special meeting. The only legal authority to which Deering refers us is *Palmer v. Bd. of Trustees of Crook Cty. School District No. 1*, 785 P.2d 1160 (Wyo.1990), and *Ward v. Goshen Cty. School District No. 1*, 865 P.2d 618 (Wyo.1993), neither of which have substantive application to the pivotal issue of whether the March 23 meeting was regular or special.

 Countering Deering's position, the board notes correctly that the Wyoming Public Meetings Act does not expressly prohibit the rescheduling of a regular meeting. While the Act defines "meeting," WYO. STAT. § 16–4–402(a)(iii) (1997), the Act does not expressly define "regular meeting" or "special meeting," although those terms appear in several provisions. The term "emergency meeting" also appears in the Act, WYO. STAT. § 16–4–404(d) (1997), but without express definition. Because the Act concerns public meetings of deliberative governing bodies of government agencies, we find it helpful to turn, as we have before, to parliamentary procedure and law for guidance. *Hirschfield v. Bd. of Cty. Comm'rs of the Cty. of Teton*, 944 P.2d 1139, 1144 (Wyo.1997). In the parliamentary context,

The term **regular meeting** (or **stated meeting**) refers to the periodic business meeting of a permanent ..: board, held at weekly, monthly, quarterly, or similar intervals, for which the day (as, "the first Tuesday of each month") should be prescribed by the bylaws....

. . . .

Any business that falls within the objects of the society as defined in its bylaws (or, in the case of a board, any business within the authority of the board) can be transacted at any regular meeting....

The Scott, Foresman Robert's Rules of Order Newly Revised § 9 at 90–91 (1990 ed.); *and see* Sturgis Standard Code of Parliamentary Procedure, Ch. 12 at 110 (2d ed.1996).

In contrast,

[a] **special meeting** (or **called meeting**) is a separate session of a society held at a time different from that of any regular meeting, and convened only to consider one or more items of business specified in the call of the meeting. . . . The reason for special meetings is to deal with important matters that may arise between regular meetings and that urgently require action by the society before the next regular meeting. . . .

Robert's Rules, *supra,* at 91–92; Sturgis, *supra,* at 110.

Factually, it is clear that the board at its regular February meeting approved the change of the March regular meeting date from the 30th to the 23rd. It is, we think, implicit in that simple act of rescheduling that the board members intended to conduct normal regular business on that rescheduled date. No inference can be fairly drawn from the facts that the board members intended the rescheduled meeting to be restricted only to a specific item of business as opposed to normal regular business. The record is clear that the board members had notice of the rescheduling because they attended the February meeting. Deering complains that he did not have notice; yet he does not, and cannot, point to any provision of the Public Meetings Act requiring the board to give him notice.

In his reply brief, Deering asserts, for the first time, that the simple statement in the board's minutes of the February meeting, that the date for the regular March board meeting has been changed from March 30 to March 23, is not proof that the rescheduling was board action conducted by motion and vote. Deering fails to account for the testimony of board members Eichler and Wilbert that at the February board meeting the change "was approved." He also fails to support his point with any legal authority. Our own research on this parliamentary point informs us that "[i]n small boards ... most parliamentary rules apply, but certain modifications permitting greater flexibility and informality are commonly allowed."

Robert's Rules, *supra,* § 1 at 9. One area where this is so is "where there seems to be no opposition in routine business or on questions of little importance," in which case time is saved by the procedure of unanimous or general consent. *Id.* at § 4, pp. 52–53. This method "can be used to take action without even the formality of a motion." *Id.* at § 4, p. 53. We think the important question in a matter of this nature is whether the board members agreed to change the date of the March regular meeting. *See Lafleur v. City of Chicopee,* 352 Mass. 746, 227 N.E.2d 702, 705 (1967) (unanimous consent permits change, at least in advance of the usual meeting date, of the date set by rule for the regular meeting). If it is clear that they have agreed, as it is here, and that agreement is expressed in a way not inconsistent with any controlling law, as it is here, "that the niceties of every parliamentary rule have not been followed does not render the act illegal." *Commonwealth v. Chace,* 403 Pa. 117, 168 A.2d 569, 571 (1961). The record shows that this February board meeting was handled in an orderly way and in accordance with the procedure customarily used by this board. Deering offers no legal authority to sustain his position of a parliamentary violation. At the risk of putting too fine a point on this matter, we find the explanation in *Hill v. Goodwin,* 56 N.H. 441, 447, 449 (1876), apropos:

These popular assemblies, we may presume, are usually presided over by men of at least average intelligence, but without experience in the intricacies of parliamentary rules; and to compel such presiding officers to govern their meetings according to such rules would inevitably result in very great confusion. However wise or necessary such rules may be for legislative bodies, they are not adapted to the successful or prompt dispatch of business in town meetings. . . .

. . . .

To hold that there was any such irregularity in this as would affect the proceedings ... would be "sticking at the bark" rather than regarding the substances of things.

We hold that the board's March 23 meeting was simply a rescheduled regular meet-

ing; the board members had proper notice of that meeting and that normal business within the board's authority would be transacted in accordance with the Wyoming Public Meetings Act; and the decision eliminating Deering's position made at that meeting was in conformity with the Act and was lawful.

 We now turn to Deering's contention that the board violated its reduction in force policy when it paid him thirty days' severance pay instead of giving him thirty days' advance notice before the effective reduction in force date. Deering maintains that the board's action frustrated one purpose of the advance notice provision, which is to give the employee some opportunity for input and to explore options. Deering acknowledges that he accepted the severance pay offered by the board in lieu of thirty days' notice, and that he did not have to work during that period of time.

We find no merit in Deering's argument. As we read the board's reduction in force policy, we understand that such a reduction "is not considered to be a termination." [2] It "shall be administered as deemed necessary and appropriate" by the board which enjoys the prerogative and heavy responsibility of management. Deering does not claim that the board has used the reduction in force policy as a false pretext because it lacked grounds of poor job performance for termination. He does not challenge the evidentiary sufficiency of the board's economic-based decision. We have previously recognized that an employer facing budgetary constraints has a right to act in accordance with legitimate business interests. *Rompf v. John Q. Hammons Hotels, Inc.*, 685 P.2d 25, 29 (Wyo.1984). *See also Cox v. Resilient Flooring Div. of Congoleum Corp.*, 638 F.Supp. 726, 731–33 (C.D.Cal.1986). We find no support, in the record or in the law, for Deering's argument that the thirty-day notice period provides the employee an opportunity to dissuade management of an economic-driven decision reserved to it in the exercise of its discretionary business judgment. The board has referred this Court to

*Larson v. SYSCO Corp.*, 767 P.2d 557 (Utah 1989), in which the court upheld an employer's termination without notice because the employer provided the employee with severance pay for a period of time equal to the advance-notice time specified in the employment agreement. Although not on "all-fours," the case is instructive. We agree with the board that relieving Deering of the obligation to perform employment services for a thirty-day period in exchange for the severance pay he accepted violates neither the board's policy nor due process notions.

We have considered each of Deering's contentions and find no merit in any of them. We affirm the district court's summary judgment in favor of the board.

---

2. It is clear to this Court, as it is to Deering's counsel, that the grievance and appeal procedures set forth in the termination policy do not apply here, because this is a reduction in force case only. Consequently, we do not need to address the board's assertion that Deering failed to exhaust the grievance and appeal remedies. Because those remedies do not apply to a reduction in force action, Deering quite simply had no administrative remedies to exhaust.